THOMAS D. MIDKIFF ET AL. V. S. A. STEPHENS ET AL.

No. 1124.

1. **Limitation—Pleading Coverture.**—Suit by a number of plaintiffs claiming as the heirs at law of Mary J. Midkiff for 200 acres of land, her separate property. The defendants pleaded limitation. The plaintiffs rejoined, that "most of plaintiffs are married women and minors, and have been since the ouster" alleged. *Held*, that the allegation as to coverture and minority was insufficient, and it was not error to exclude testimony to the coverture of one of the plaintiffs and the minority of another.

2. **Pleading—Certainty.**—A plea which does not show on its face and with certainty in whose behalf it is made, presents no issue, and should be treated as a nullity.

3. **Practice—Dismissal by Plaintiff After Reconvention.**—After the defendants have reconvened, asking affirmative relief, the plaintiff can not by dismissing his suit withdraw from consideration by the court the case set up in reconvention. And when the decision upon the intervention concludes the plaintiff's case, he suffers no injury from a refusal by the court of leave to dismiss.

4. **Limitation of Five Years.**—Where possession and the conditions prescribed in the statute of five years' limitations are shown, it is of no consequence what title, or whether the grantor in the deed under which was the possession, had any title, at the time of executing the deed.

APPEAL from Bell. Tried below before Hon. W. A. BLACKBURN. The opinion contains a statement.

*Moffett & Anderson,* for appellants.—1. The trial court erred in excluding testimony as to the coverture of Fannie H. Hunt and the infancy of Susie Midkiff, plaintiffs. 2 Sayles' Civ. Stats., art. 3201; Ortiz v. De Benavides, 61 Texas, 63; Parish v. Alston, 65 Texas, 197.

2. The court erred in refusing to permit plaintiffs, while said cause was being tried, and before the jury retired to consider of their verdict, to withdraw this cause from the jury, and take a nonsuit, because plaintiffs, while said case was being tried, and before the jury retired to consider of their verdict, asked leave of the court to withdraw this cause from the jury and take a nonsuit; and because plaintiffs were surprised at the rulings of the court in excluding the evidence of the coverture of Mrs. Hunt and the infancy of Susie Midkiff. Rev. Stats., arts. 1260, 1301; Hoodless v. Winter, 16 S. W. Rep., 427; Thomas v. Hill, 3 Texas, 270; Guest v. Guest, Dall., 394; Hatchet v. Conner, 30 Texas, 104; Lockett v. Railway, 78 Texas, 211; Block & Co. v. Weiller, 61 Texas, 692; Easterling v. Blythe, 7 Texas, 210; Guffey v. Mosely, 21 Texas, 410.

*Montieth & Furman,* for appellees.

KEY, ASSOCIATE JUSTICE.—This is an action of trespass to try title, begun December 20, 1892, in which appellants in this court were plaintiffs in the court below. The defendants pleaded a general denial, not guilty, three, five, and ten years' limitation, and improvements in

good faith; they also pleaded title in themselves, and prayed for judgment for the title and possession of the land, and for general and special relief. The plaintiffs filed a supplemental petition in reply to the defendants' answer, and among others made the following averment: "And the statute of limitations pleaded by defendants in this cause should not prevail, because most of plaintiffs are married women and minors, and have been since the ouster aforesaid."

Upon the testimony in the record this court finds the following conclusions of fact:

1. Mary Jane Midkiff died in Bell County, Texas, during the year 1876, seized and possessed in her own name and right in fee simple of 1018½ acres of land, situated in Bell County, Texas, a part of the Thornton Stone league. That she left surviving her, her husband, C. S. Midkiff, and their children, Thomas D. Midkiff, J. C. Midkiff, Fannie A. Hunt, nee Fannie A. Midkiff, Mary J. Midkiff, now Mary J. Wood, Merris E. Midkiff, now Merris E. Hall, and Susie Midkiff, the heirs of her body. That the 200 acres of land in controversy was a part of the said 1018½ acres tract, and was the separate property of the said Mary J. Midkiff at the time of her death.

2. The probate records of Bell County, Texas, were introduced in evidence, showing that during the year 1878 C. S. Midkiff, the surviving husband of Mary Jane Midkiff, deceased, made application for and was appointed guardian by the County Court of Bell County, Texas, of the persons and estates of the said minors, Thomas D. Midkiff, Mary J. Midkiff, Merris E. Midkiff, Susie Midkiff, and J. C. Midkiff, and that as guardian of said minors he made application in said County Court for partition of said 1018½ acres of land between himself, the said C. S. Midkiff, and his heirs at law, Fannie A. Hunt and said minors above mentioned; which application was granted, and commissioners were appointed and ordered by said court to partition said 1018½ acres tract, and to set apart a one-third life interest in same to the said C. S. Midkiff as surviving husband, and to divide the remainder between her said heirs. That, in compliance with said order of the court, the said 200 acres in controversy were set apart to the said C. S. Midkiff, and the balance was partitioned to the said Mrs. Hunt and the heirs above named; which report of said commissioners was confirmed by said court, and it was adjudged that each of the parties receiving a share or portion of said estate, including C. S. Midkiff, should hold the same by title in fee simple.

3. The proof shows, that plaintiffs were the heirs and all of the heirs at law of the body of Mary Jane Midkiff, deceased, and that plaintiffs and defendants in this cause both claim title to said land in controversy from and under a common source—Mary Jane Midkiff, deceased. That Mary Jane Midkiff, at the time of her death, was living on said 200 acres of land with her husband, C. S. Midkiff, and said minor children

4. C. S. Midkiff moved off of the land in controversy in the spring of 1841, and out of Bell County, and has not lived on the land or in Bell county since.

5. Defendants offered in evidence a deed, dated February 22, 1881, from C. S. Midkiff and second wife, Nancy E. Midkiff, to William W. and J. H. Stephens, to the said 200 acres of land, which reads as follows:

"Know all men by these presents: That we, C. S. Midkiff and Nancy E. Midkiff, his wife, both of Bell County, Texas, for and in consideration of the sum of eight hundred dollars to us in hand paid by William W. Stephens and Jerry H. Stephens, of the same county and State, the receipt whereof is hereby acknowledged and confessed, have this day bargained, sold, delivered, released, conveyed, and confirmed unto the said William W. and J. H. Stephens, the following described tract of land, to wit: Situated in Bell County, Texas, on the waters of Elm Creek, a part of the league of land granted to Thornton Stone, being that portion of said league which was set apart to the said C. S. Midkiff by the County Court of Bell County in a partition of the interest of Mary Jane Midkiff, deceased, former wife of said C. S. Midkiff, among her (the said Mary J. Midkiff's) heirs, said part set apart to the said C. S. Midkiff having the following field notes, metes, and bounds, to wit: Known in said partition as lot number 2. Beginning at the N. W. corner of lot number 1, a stone in west line of Stone league, from which an elm marked X bears S. 66½° E. 5 varas; thence S. 71° E. 1310 varas to a stake, from which an elm marked X bears N. 56° W. 52 varas; thence N. 19° E. 862 varas to a stake, from which an elm marked X bears S. 71° E. 3 varas; thence N. 71° W. 1310 varas to a stake in west line of said Stone league, from which an elm marked X bears N. 42° W. 11 varas; thence S. 19° W. 862 varas to the beginning; containing 200 acres of land. To have and to hold the said 200 acres of land, together with all and singular the tenements, hereditaments, appurtenances, rights, ways, and easements to the same belonging or appertaining, unto the said William W. and J. H. Stephens, their heirs and assigns, forever, and we hereby bind ourselves and our heirs to forever warrant and defend the title of said William W. and J. H. Stephens to the said 200 acres of land against the lawful claims of all persons claiming or to claim the same or any part thereof, by, through, or under us or either of us.

"Witness our hands, this 22nd day of February, A. D. 1881.

[Signed]　　"C. S. MIDKIFF,<br>
"NANCY E. MIDKIFF."

Said deed was duly acknowledged on same day and filed for record on the 24th day of February, 1881, and on the 26th day of February, 1881, recorded in book 35, on pages 240 and 241, deed records of Bell County, Texas.

6. It was shown that J. H. Stephens had conveyed his interest in said 200 acres of land to W. W. Stephens, and that W. W. Stephens had conveyed the entire tract to his wife and codefendant, S. A. Stephens.

7. The defendants' plea of five years' limitation was sustained by proof of adverse possession, beginning in March, 1881, and continuing up to the time of trial, under the deed set out in the fifth conclusion of fact, and that they had paid all taxes due thereon since February, 1881. The testimony also sustains the plea of ten years' limitation.

8. The testimony also sustains the defendants' plea of improvements made in good faith.

*Conclusions of Law.*—1. Appellants offered to prove that, at the time appellees took possession of the land in controversy, appellant Fannie A. Hunt was a married woman, and appellant Susie Midkiff was a minor and a single woman, and that said disabilities of coverture and minority still existed at the time of the trial. The court excluded this testimony, because there was no pleading to warrant its admission. We think this ruling was correct. The plaintiffs' petition and the testimony show that there were four female plaintiffs, and the averment in the supplemental petition, that "most of plaintiffs are married women and minors," was too indefinite to admit proof. The plea should have stated that all of the plaintiffs—which would have included every one—or that certain designated plaintiffs, were married women or minors, or both, as the case may have been, at the time of the ouster. We can not hold that the words "most of plaintiffs" apply to any particular plaintiff. A plea that does not show on its face, and with certainty, in whose behalf it is made, presents no issue between the parties, and should be treated as a nullity. It is true that appellants' petition shows that Susie Midkiff sues by a guardian, but it does not show that the guardian was appointed because of her minority. The guardian may have been appointed for other reasons than her minority (Revised Statutes, article 2469); and the reason for the guardianship, if other than minority, may not have existed at the time of the ouster.

2. There was no reversible error committed in refusing to allow appellants to withdraw the case from the jury and take a nonsuit. Appellees had asked for affirmative relief, and while appellants had the right to abandon or withdraw their suit, the court could not rightfully, without appellees' consent, withdraw from the jury, or refuse to submit to the jury, the cause of action set up in appellees' answer; and the verdict of the jury and the judgment entered thereon in appellees' favor are conclusive of the rights of the parties in the subject matter of the suit. Therefore, if there was technical error in refusing to allow the appellants to take a nonsuit as to their cause of action, inasmuch as the verdict and judgment in appellees' favor on the cause of

action pleaded by them settle the question of title to the land in controversy, such error constitutes no ground for reversing the judgment.

3. There is no merit presented by the fourth assignment of error. The deed which formed the basis of appellees' plea of five years' limitation purports to convey the land, and on the question of limitation it is immaterial whether the grantor owned only a life estate or whether he owned any interest at all in the land.

4. After considering all the questions presented in appellants' brief, our conclusion is that the judgment should be affirmed.

*Affirmed.*

Delivered January 16, 1895.