## DULLER v. McNEILL.

(Court of Civil Appeals of Texas. Galveston. Jan. 27, 1914.)

1. HOMESTEAD (§ 96*)—VENDOR'S LIEN—ENFORCEMENT.

Where vendor's lien notes were executed for part of the purchase money of certain real estate, and renewal notes, thereafter given for the originals, also expressly reserved a lien, the fact that in the meantime the property had become the homestead of the purchaser and his wife did not prevent its sale on foreclosure of the lien.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 147–153; Dec. Dig. § 96.*]

2. HOMESTEAD (§ 96*)—VENDOR'S LIEN—ENFORCEMENT—ATTORNEY'S FEES.

Where vendor's lien notes, given for the price of land, provided for attorney's fees in case it was necessary to employ attorneys to collect the note, the fact that the land subsequently became the homestead of the purchaser and his wife did not prevent the enforcement of the lien for the attorney's fees, as well as for the amount of the notes.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 147–153; Dec. Dig. § 96.*]

3. VENDOR AND PURCHASER (§ 274*) — VENDOR'S LIEN NOTES—CONSIDERATION.

Where vendor's lien notes were given for the purchase price of certain realty, and thereafter were taken up and a new note given for the amount due on the originals, and the renewal note also reserved all the rights to the lien that were conferred by the originals, it was not material that the original notes included borrowed money, as well as the consideration for the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 769–771; Dec. Dig. § 274.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by W. A. McNeill against David M. Duller and wife. Judgment for plaintiff, and defendant Carrie Nell Duller appeals. Reversed and reformed in part. Affirmed in part.

See, also, 161 S. W. 45.

Baldwin & Baldwin, of Houston, for appellant. Sam, Bradley & Fogle, of Houston, for appellee.

REESE, J. This is an action by W. A. McNeill to recover of David M. Duller and his wife, Carrie Nell Duller, upon two certain promissory notes, executed by defendants, and secured by the vendor's lien on separate parcels of land, together with interest and attorney's fees. Upon trial with a jury, at the conclusion of the evidence, the court instructed the jury to return a verdict for plaintiff against both defendants for the amount due upon said notes, including interest and attorney's fees, and for foreclosure of the lien as prayed for, also for the insurance premium paid, which was done, and judgment rendered accordingly. Defendants made a motion for a new trial, which was overruled, whereupon the defendant Carrie Nell Duller alone prosecutes this appeal.

It was alleged in the petition, in substance, that on November 9, 1905, defendants executed to J. C. Means four promissory notes payable to the order of Means, three of which were for $300 each, payable, respectively, July 1, 1910, January 1, 1911, and July 1, 1911, and the fourth one for $225.37, payable January 1, 1912, each bearing interest from date at 8 per cent. per annum, and providing that all past-due interest should bear a like rate, and each note providing that failure to pay it, or any installment of interest, when due should, at the option of the holder, mature all of said notes, and providing, further, in the usual terms, for the payment of 10 per cent. attorney's fees, if not paid when due and placed in the hands of an attorney for collection. It was alleged that these notes were given in part payment

of lots 8. and 9 in block 103 in Houston Heights, and were secured by the vendor's lien retained in the deed and notes on said property. It was alleged that afterwards, on June 23, 1911, the notes remaining unpaid, defendants requested the Louisiana & Texas Lumber Company, which had become the legal owner and holder thereof, and of the superior title to the land, by assignment thereof to extend the time of payment thereof, whereupon defendants executed to said company their single note for the amount of said four notes, to wit, $1,226.15 (being one of the notes sued upon), in lieu of said four notes, in which this fact was recited, and the vendor's lien was expressly retained and reserved as in the original notes. This last note was due three years from its date, with interest at 8 per cent. per annum, payable semiannually, and it was provided, as in the original notes that failure to pay any installment of interest when due should,· at the option of the holder, mature the note, and there was a provision for the payment of 10 per cent. attorney's fees in the usual terms, that in due course of trade and for value the Louisiana & Texas Lumber Company indorsed said note to plaintiff, and he is now the legal owner and holder thereof, and at the same time said company transferred and assigned to him the vendor's lien and superior title to the land. It was further alleged that on June 22, 1911, defendants executed to C. A. McKinney their certain promissory notes for $505, payable three years after date, with interest at the rate of 8 per cent. per annum, payable semiannually, and providing that failure to pay any installment of interest when due should, at the option of the holder, mature the note, and also providing in the usual terms for payment of 10 per cent. attorney's fees. It was alleged that this note was given for the purchase money of lot 10 and the south half of lot 11 in block 103 in Houston Heights, which was on said date conveyed by said McKinney to defendants, and was secured by the vendor's lien expressly retained in said deed and note, and that said note and the superior title to the land and vendor's lien were duly assigned, indorsed, and transferred by McKinney to plaintiff, and he is now the legal owner and holder thereof. It was averred that defendants failed and refused to pay the semiannual installments of interest due on said last-mentioned note on December 22, 1911, and on June 22, 1912, and on the first-described note on December 23, 1911, and June 23, 1912, whereupon the plaintiff, being the legal owner and holder thereof, exercised his option and declared both of said notes due, placed the same in the hands of attorneys for collection, and agreed with them to pay them 10 per cent. thereof as attorney's fees for collection, which was a reasonable attorney's fee. It was further averred that on June 23, 1911,

at the time of the execution of the note for $1,226.15, and for the purpose of securing payment of said note and the other for $505, plaintiffs executed their mortgage deed of trust upon the property aforesaid, in which said instrument it was provided that defendants should keep the property insured for $1,500, the policy to be delivered to and kept by plaintiff, and that in the event they should fail to do so, the holder of the notes might pay said insurance and the same should be secured by said mortgage. Said mortgage was also transferred to plaintiff. It was averred that, on account of the failure to pay the premium due for insurance, plaintiff was compelled to pay the sum of $54, part of said premium which, under the terms of said mortgage, is due and owing to him by defendants as part of the indebtedness secured thereby. Defendants in their answer set up certain special exceptions, which need not be stated. They pleaded general denial and specially denied that the notes were due when this suit was filed, except the accumulated interest, and allege that plaintiff had no right to exercise his option to declare said notes due, that plaintiff had never presented the notes, or either of them, to them for payment of the semiannual installments of interest as alleged, and that they did not know, except by the assertion of others, that plaintiff was the owner of the notes; that they are now and have always been ready and willing to pay the installments of interest due to the rightful owner of the notes, and they tendered the amount so due into court, and pray that the same be credited on the notes, and that plaintiff be not allowed to recover anything further. It was averred that plaintiff had waived his right to declare the notes due for failure to pay said installments of interest, for that he had, through one Barker, his agent, informed defendants that it would not be necessary to pay such installment, but that, in the event plaintiff should conclude to demand such payment, he would notify defendants in ample time to enable defendants to make such payments; that defendants relied upon this, and plaintiff never at any time gave them such notice, until they were notified by plaintiff's attorneys that they had the notes for collection, the whole amount being demanded. It was further averred that the property for which the notes were given was their homestead, that they are and were at the time of said purchase, husband and wife, living together as such, and constituting a family, and that they immediately moved upon and occupied the property as their homestead, and that, by reason of this fact, plaintiff had no right to exercise his said option to declare the notes due, nor to charge the attorney's fees upon the property as a lien. The court upon the verdict of the jury rendered a judgment against both defendants for the amount due,

principal, interest and attorney's fees, on the notes, and foreclosing the respective vendor's liens, and also rendered judgment for the $54 insurance premium paid by plaintiff, without lien, however, as to this.

We have set out so fully the allegations of the plaintiff's petition for the reason that they may stand also as conclusions of fact. Every material allegation of the petition with regard to the execution of the several notes, the transfer of the same to plaintiff, and his present ownership thereof, were established by the undisputed evidence. The notes and other documents set out were introduced in evidence, and contained the various provisions set out in the petition. The allegations of the petition as to the failure to pay the several installments of interest were established likewise by the undisputed evidence. The testimony of plaintiff and his agent Barker was positive and emphatic as to continued demands upon defendant Duller for this interest. The following letter from Barker to defendant David M. Duller, which he admitted having received, was introduced in evidence: "Mar. 28th, 1912. Mr. David M. Duller, Houston Heights, Texas—Dear Sir: I write you again in regard to the interest which is due on your note. This as you will remember was due on December 22nd last, which is now more than three months past due. Parties who we turn notes to will not take them unless the interest is paid promptly on them, and if we turn notes and the interest is not paid they expect us to collect it or take the notes back again, which would be impossible for us to do in every case. The holder of your notes has advised me that there will have to be something done soon. I will now say to you that you will have to make some arrangements by April the tenth. I give you this time so it will give you time to arrange the matter. If you can get some one to take up the whole matter and carry it for you I will be glad to let you do that. Am very sorry to put you to any inconvenience, but this must be attended to and I advise you this much in advance so you can avoid any further trouble or expense in the matter. Hoping that you will attend to it at once, I am, Yours very truly."

The notes were not declared due until default in the payment of the interest. An examination of the testimony of Duller shows that in fact the notes were not presented to him when the payment of interest was demanded, but when his testimony on cross-examination is considered, there is no substantial denial that the payment of the overdue interest was demanded of him, and that he knew that plaintiff was or claimed to be the holder of the notes. The court was justified in assuming that there was no issue of fact for the jury, but that all of the facts material to a recovery by plaintiff were established by the undisputed evidence, and we are justified in finding as our conclusions of fact that all of the material allegations of the plaintiff's petition are true. The facts alleged with regard to the payment of the insurance premium were also established by the undisputed evidence, as well as to the reasonableness of the attorney's fees. It was also shown that the property became and is now the homestead of defendants, who are husband and wife.

The first assignment of error complains of the judgment is so far as it is a personal judgment against the appellant, Mrs. Carrie Nell Duller, for any part of the debt. Appellee in his brief confesses error as to this part of the judgment. The judgment against Mrs. Duller, except as to the foreclosure, was not authorized. This does not require a reversal of the entire judgment, however. The judgment will be reformed so as to eliminate this feature, leaving it to stand as rendered against David M. Duller (who does not appeal), and as to Mrs. Carrie Nell Duller as to the foreclosure of the respective liens.

[1] The fact that the property was made the homestead of Mrs. Duller after its purchase cannot affect any rights of the original vendor in regard to the unpaid purchase money under the contract of purchase, nor the rights of the holder of the notes for the unpaid purchase money in their lien duly reserved. The renewed note for $1,226.15, given in lieu of the four original purchase-money notes and the assignment thereof, expressly reserved to the payee thereof all of the rights preserved in the original notes to the vendor, and stands exactly on the same footing as the original notes. The fact that the deed from Means to Duller does not provide that failure to pay installments of interest shall, at the option of the holder of the notes given to him, mature the notes, did not affect such right expressly given in the four original notes, and in the renewal note, the mortgage given by Duller and wife to secure the same, and in the instrument of acknowledgment executed by Duller and wife to the Louisiana & Texas Lumber Company when they procured the extension. The fact that the property was the homestead of appellants was of no importance. The stipulation as to the effect of failure to pay the semiannual installments of interest necessarily authorized a suit on the notes upon the happening of this contingency, and this necessarily authorized a foreclosure of the lien, and the fact that the property was the homestead of the parties did not, in any way, affect the right expressly given to the holder of the note. The second and third assignments of error are without merit and are overruled.

[2] The fourth assignment of error complains of the judgment in so far as it forecloses the lien upon the homestead for the attorney's fees. There is no merit in appellant's contention on this point. The homestead right is subordinate to the rights of the vendor, which passed to the holder of

the note and lien growing out of the purchase-money contract. When the contingency occurred calling for the payment of attorney's fees, they became a part of the consideration agreed to be paid for the land, and a part of the note secured by the lien. Neese v. Riley, 77 Tex. 348, 14 S. W. 65; Baker v. Collins, 4 Tex. Civ. App. 520, 23 S. W. 493. In Walters v. Building & Loan Ass'n, 8 Tex. Civ. App. 500, 29 S. W. 54, and Harn v. Am. Mutual Bldg. Ass'n, 95 Tex. 79, 65 S. W. 176, it was held that in the case of a mechanic's or materialman's lien on the homestead for improvements thereon, the contract to pay attorney's fees could not be enforced as a lien on the homestead. The distinction between those cases and the one here presented rests upon the fact that the property was not the homestead at the time the obligation was given, and that the homestead right accrued only upon compliance with the obligation for payment of the purchase money in all of its stipulations. In the cases cited by appellant the lien was given upon an established homestead, for improvements, and was limited by the provisions of the Constitution to the debt incurred for that purpose, as is shown in the Walters Case cited. It is true that when the renewal note was executed the property was the homestead, but this note, as we have stated, stood exactly in the place of the original notes. It is not, we think, satisfactorily shown that attorney's fees provided for in the original notes were added to the amount of those notes and embraced in the new note for $1,226.15; but, if they were, the parties had a right to adjust the matter in obtaining the extension by so agreeing to make this the amount of the debt, and to give a new note for the principal, interest, and attorney's fees provided for in the original notes, and to provide also for payment of attorney's fees on the new note. They deliberately so contracted, and we know no reason why they should not be allowed to do so. This objection applies only to the note for $1,226.15. The note for $505 was the original note given to McKinney for the purchase money of the other lot and a half.

The evidence was undisputed that plaintiff was the legal owner and holder of the notes as alleged. The sixth assignment is overruled.

[3] The court did not err in sustaining the objection of appellees to the testimony offered by appellant to show that the true consideration for the purchase money of lots 8 and 9 was less than the amount shown in the notes, and that the notes also included borrowed money. The evidence was excluded on the ground that there was no pleading to support this contention of appellant. In this there was no error. We are inclined to think that this would have been no defense to the foreclosure of the lien. By the express terms of their contract appellants agreed to pay this amount as purchase money. In the renewal note to the Louisiana & Texas Lumber Company the whole amount was treated as purchase money. Whatever right of homestead there was in appellants was subject to the rights of the original vendor growing out of the purchase as set out in the contract, which rights wholly passed to and were held by appellee. The parties so contracted, as they had a right to do, and there is no reason why they should not be governed by the terms of their contract. At any rate, when the matters came to be adjusted by appellants and the holders of the original notes, with a view to the extension, it was again stipulated that the amount of the renewal note was for the purchase money of the lots, and secured as such by the express lien reserved. Having thus secured the extension, it would be unconscionable to allow appellants to avoid the condition on which it was obtained.

The remaining assignments of error need not be discussed. What has been said substantially disposes of them, and they are overruled.

The personal judgment against Mrs. Duller, as has been stated, is reversed. Except as to this portion of the judgment it is in all things affirmed as to Mrs. Duller. As David M. Duller does not appeal, the judgment as to him is not disturbed. The costs of the appeal are adjudged against appellee.

Reversed and reformed in part.

Affirmed in part.