G. W. AND ELIZABETH WALTERS v. TEXAS BUILDING
AND LOAN ASSOCIATION.

No. 392.

1. **Homestead—Lien Upon, How Fixed.**—A lien upon the homestead may be fixed by express contract for work and material, as well as under the statute regulating mechanic's liens.

2. **Same—With Whom Contract May be Made.**—In order to constitute a lien against the homestead, it is not necessary that the person contracting with the homestead owner shall himself own the material or do the work; he comes within the meaning of the exception if the work done or material furnished be done or furnished under contract with him.

3. **Same—Attorney Fees Not a Lien.**—Attorney fees are not embraced within the exceptions named in the Constitution for which the homestead may be incumbered.

4. **Corporation—Discounting Notes.**—While the Constitution prohibits the Legislature from creating corporations with banking and discounting privileges, yet when one has received the proceeds of a note discounted by a corporation, he is estopped from setting up the defense of ultra vires.

5. **Usury in Building and Loan Contract.**—Appellants made a contract for certain improvements on their homestead, to cost $2600, and then applied for assistance to a building and loan association, which took up the contract and had it carried out, taking appellants' note for $3900, with interest at 12 per cent, payable in monthly installments of $65 each, for a period of five years, the whole to become due on any default. *Held*, that the excess of the amount over the $2600 actually advanced was interest, and the contract usurious.

APPEAL from Navarro.   Tried below before Hon. RUFUS HARDY.

*F. M. Etheridge* and *Frost & Blanding*, for appellants.—1. The mechanic's and materialman's liens are creatures of law, not of contract, and are specific, existing only to secure payment for work and material furnished, and can not be by construction extended to cover other considerations.   Const., art. 16, sec. 50; Phil. Mech. Liens, sec. 36.

2. The mechanic's and materialman's lien being created by the Constitution, and the method of fixing and enforcing the same, and its extent and duration, being governed by statute, any departure from the terms of the statute or omission to pursue the manner of fixing or enforcing the lien prescribed by law, renders such lien of no avail as against the homestead.   Rev. Stats., arts. 3174, 3175, 3179a.

3. A contract whereby a private corporation, created and organized by and under the laws of the State of Texas, exercises the privilege of discounting paper, or any moneyed obligation, is void, and no recovery can be had thereon by suit.   Const., art. 16, sec. 16; Anderson v. B. and L. Assn., 16 S. W. Rep.; 53 Am. Dec., 742; Saltmarsh v. Bank, 14 Ala., 677; Bank v. Johnson, 14 Otto, 276; Munn v. Com. Co., 15 Johns. (N. Y.), 44; Ins. Co. v. Ely, 2 Cow. (N. Y.), 699; Loan Co. v. Towner, 13 Conn., 259; Bank v. Baker, 15 Ohio St., 85; Talmadge v. Pell, 7 N. Y., 328; Bank v. Benedict, 1 Hall (N. Y.), 556; Wickler v. Bank, 42 Md., 592.

4. Usury is defined to be the contracting to pay for the use or loan of money a greater rate of interest than 12 per cent per annum. Whether a contract is usurious or not does not depend upon the forms employed by the parties. The jury should look to all the facts proved touching the transaction, and from them determine whether the writings made by the parties express the real contract between them, or whether such writings are only a device or pretense not expressing the real transaction, but expressing a condition or conditions not true, but which are colorable and apparently render them true for the purpose of evading the usury law. Mitchell v. Napier, 22 Texas, 120; Smith v. Glanton, 39 Texas, 366.

*Richard Mays, R. S. Neblett,* and *Watts, Aldredge & Eckford,* for appellee.—1. Any person or firm, lumber dealer, artisan, or mechanic, who may labor or furnish material for the erection of a building or improvements, has a lien on such building and improvements and on the lot or lots connected therewith, to secure the payment of same. Sayles' Civ. Stats., arts. 3140, 3164; Pool v. Sanford, 52 Texas, 621; Fagan v. Boyle, 65 Texas, 324; Sanvall v. Ford, 55 Iowa, 464; Phil. on Mech. Liens, p. 88, sec. 53; Martin v. The State, 24 Texas, 68; Bartee v. Railway, 36 Texas, 649.

2. The Constitution does not prohibit incumbrances on the homestead, signed by husband and wife and privily acknowledged by the wife, for improvements thereon, and appellee's contract was good at common law, independent of the statute, and had four years from maturity of same in which to foreclose its lien. Const., art. 16, sec. 50; Taylor v. Houck, 65 Texas, 238; Martin v. Roberts, 57 Texas, 564; Mundine v. Berwin, 62 Texas, 343; Cameron v. Marshall, 65 Texas, 11, 12; Lyon v. Elser, 72 Texas, 305; 2 Jones on Liens, sec. 1185; Hansell v. B. and L. Assn., 20 S. W. Rep., 116; Rev. Stats., art. 2341; Waples on Homestead and Exemption, p. 301.

3. No question of usury arises in the case as presented to the jury by the charge. The jury found that it was a contract between the parties to place improvements upon the homestead, and not a loan of money, and the error, if any, became immaterial. Rev. Stats., art. 2972; White v. Holliday, 11 Texas, 606; Oliver v. Chapman, 15 Texas, 400; Bradshaw v. Mayfield, 18 Texas, 21.

FINLEY, ASSOCIATE JUSTICE.—The facts of this case are substantially as follows: G. W. Walters and Elizabeth E. Walters, husband and wife, residents of Vernon, Wilbarger County, Texas, owners of four contiguous lots in the town of Vernon, known and designated as their homestead, were sued by appellee, the Texas Building and Loan Association, a private corporation, with its home office at Corsicana, Texas, for recovery on a note of $3900, executed by appellants, less $520, payments indorsed thereon, dated August 12, 1890, payable to appellee at Corsicana, in monthly installments of $65 each, the first

due September 12, 1890, with interest at 12 per cent per annum, and attorney's fees of 10 per cent on the amount due. The note provides, that should any installment become due and remain unpaid for ten days thereafter, then at the option of the holder the whole sum remaining unpaid shall become immediately due, and bear from that date 12 per cent interest. There is also a recital in the note, that it is given for labor and material advanced for the improvement of appellants' homestead, and that appellants had executed, to secure said note, a lien on their homestead premises superior to the homestead exemption. The suit also embraces the mortgage executed by appellants, which recites, that defendants are desirous of making improvements on their homestead. Appellee contracted to advance to appellants labor and material for the purpose of making improvements on appellants' homestead, and secured themselves by lien on the premises, and the procurement of insurance by appellants on the premises, payable, in case of loss, to appellee. In consideration of the labor and material, and to secure the note executed by appellants therefor, a conveyance was made of said premises—120 by 240 feet—with defeasance in event of payment of said note. This mortgage is acknowledged by appellants, with separate acknowledgment of the wife, and recorded August 18, 1890, in Wilbarger County.

G. W. Walters had, some time previous to the date of the note, in contemplation of the erection of a new residence house on said premises, caused plans and specifications to be prepared, and advertised for bids, in response to which several bids were submitted. The contract was first let to Wells & Co., who began the work, but were discharged by Walters, and the bid of Wood & Tunnell for $2600 accepted. The basement story had already been built. After accepting the bid of Wood & Tunnell, G. W. Walters applied to local agents of appellee at Vernon, with the plans and specifications and bid of the contractors, Wood & Tunnell, and proposed to borrow $2600 for the purpose of building a house. The agents informed him that he would have to fix it so that appellee would have a lien on the premises, which he agreed to do. G. W. Walters signed an application addressed to appellee, prepared by its agents, setting forth that he desired assistance from appellee to the extent of $2600, to be used in constructing a building on the described premises, also an estimate of the probable cost of the proposed building, and an agreement that he would pay $10 as attorney's fees for examining title to the premises and preparation of papers. The application is dated July 30, 1890. This application was passed upon and accepted by appellee, and the note and mortgage prepared and forwarded by appellee to its local agents at Vernon, who had appellants to execute the same. Appellee required of the builders, Wood & Tunnell, a bond for the faithful performance of the contract to build the house, and formally entered into a contract with them to build the house, which contract to build between appellee and Wood & Tunnell was a verbal contract for the sum of $2600. Wood & Tunnell

built the house, and were paid for labor and material performed and used in the erection of the building, as it progressed, by drafts drawn by them on appellee, which they cashed in the bank at Vernon. When the work required by the contract was completed, but before the building was finished, the appellants moved into the building.

The first eight monthly installments were paid on the note, making total payments of $527, the last of which was made on May 11, 1891.

Plaintiff's original petition was filed August 10, 1891, and first amended petition October 29, 1891, praying for judgment of the whole amount of the note remaining unpaid, for the interest thereon at 12 per cent, and 10 per cent attorney's fees, and for foreclosure of the mortgage, designated as mechanic's and materialman's lien, against appellants and their homestead.

The appellants filed their answer, October 20, 1891: (1) Plea to jurisdiction. (2) General demurrer. (3) Special demurrers: first, plaintiff's petition fails to show that plaintiff is either a mechanic, artisan, materialman, or laborer; second, that the attorney's fees stipulated in the note constitute no lien against the defendants' homestead; third, the note sued on is not due; fourth, plaintiff's lien, if any ever existed, was waived and abandoned by the acceptance of the note payable long after the time when by the statute the lien shall cease to exist. (4) Answer to the merits: first, general issue; second, special answer, that the contract evidenced by the note and mortgage sued on is void on account of its being the execution and carrying out of a discount by appellee, a private corporation; third, the contract sued on is usurious; fourth, the contract sued on was to secure $2600 by a mortgage on the defendants' homestead.

The plea to the jurisdiction, and general and special demurrers interposed by defendants, were overruled. Defendants excepted. The trial was had on November 2, 1891, before a jury, on the issues of fact, which resulted in a verdict and judgment for the plaintiff against defendant G. W. Walters, for $3808.13, with foreclosure of a lien on defendants' homestead premises, as the same is alleged to have existed on August 10, 1891, and direction for order of sale and writ of assistance.

*Opinion.*—Under the view we take of this case, it is not necessary for us to consider the numerous assignments of error based upon the rulings of the court upon exceptions to pleadings, admission of evidence, the giving and refusal of charges, etc. The case was submitted to the jury by the charge of the court upon only two issues of fact, namely, Was the contract sued upon a building contract, or was it a loan of money? Under the many assignments of error presented to this court, the propositions, which will hereafter be stated and considered, are raised:

1. It is contended that no lien can be created, fixed, and enforced upon the homestead for improvements made thereon, except it be un-

der and in conformity with the statutes regulating mechanics' liens. This proposition is untenable.

In Lippencott v. York, 24 Southwestern Reporter, 275, the proposition is denied; and it is expressly held that a valid lien upon the homestead may be created by contract providing for work and material, properly executed, as in case of sale.

2. It is urged that the transaction was a discounting transaction, and that it was therefore illegal and void, and for that reason no recovery could be had. The contention is, that as the Constitution prohibits the Legislature from creating any corporation with banking and discounting privileges, that therefore the act of the corporation which partakes of the character of discounting is illegal, and a contract made in relation thereto can not be enforced by the courts. As said in the case of Logan v. Building and Loan Association, ante, p. 490, the Constitution does not denounce discounting as illegal, but merely places a limitation upon the power of the Legislature in creating corporations. The act of discounting itself is not made illegal, but the power to engage in that business is withheld from corporations. The defense is one of ultra vires simply, and as appellants received the benefits of the contract, they can not be heard to deny the power of the corporation to enter into the contract. See Logan case, above referred to, for fuller expression of our views upon this proposition.

3. Was the subject matter of this contract such as to authorize the creation of a lien upon the homestead by contract? Our Constitution provides, that "the homestead of the head of a family shall be and is hereby protected from forced sale for the payment of all debts, except for the purchase money thereof, or for part of such purchase money, the taxes due thereon, and for work and material used in constructing improvements thereon; and in this last case, only when the work and material are contracted for in writing with the consent of the wife, given in the same manner as is required in making sale of the homestead." The contract here was for work and material used in constructing improvements upon the homestead, and comes strictly within the terms of the exception made in the Constitution. It is not required that the person with whom the contract is made for such work and material shall be the very person who does the work or who owns the material; he comes within the meaning of the exception, if the work done or material furnished be done or furnished under contract with him. The clear intent of the Constitution is, that the homestead shall not be exempt from a debt created by contract, properly executed, for improvements on the homestead.

4. Under the issue of usury, it is contended that the contract entered into was not for the erection of the building by appellee at an agreed price; but at most it was a contract to furnish labor and material for the purpose of making said improvements, estimated to cost $2600, that sum only being expended, and that the note for $3900 sued upon embraced usurious interest. We think it clear, from the lan-

guage of the note and the mortgage, that the undertaking on the part of the appellee was to furnish the labor and material, and not to erect the house at any agreed price. Not only does this intention appear from the language of the note and mortgage, but it is also made conclusive to our minds by other evidence in the case. Appellants advertised for bids, made plans and specifications of the house; the contractors who built the house bid for the work, delivering their bid to appellants, and their bid was accepted by appellants. After this, appellants made a written application, through appellee's local agents at Vernon, for assistance to the amount of $2600 in the erection of these improvements upon the homestead. When the note and mortgage were signed, the contractors' bid for the work had already been accepted, and the amount that the improvements were to cost was not only known to appellants, but known to appellee, and appellee, after the execution of the note and mortgage, then formally arranged with the contractors to do the work and to look to it for payment.

Under this state of facts, we can not consider the note for $3900 in any other light than as representing the amount of money which the building and loan association was to pay for the improvements, and the additional amount it demanded as compensation in the way of interest for the advancement of the money. In other words, $2600 of the note represented the amount to be expended by appellee in payment for the work and material going into the improvements, and $1300 represented the interest which was to be paid for the use of this money, aggregating the total sum of $3900. The sum of $1300 would be the amount of interest at 10 per cent for the period of five years on the principal sum of $2600. The contract provided for monthly payments of $65 each month; therefore, it was contemplated that the principal sum should be reduced by the amount of such monthly installments each succeeding month, and the interest provided for was greatly in excess of the rate authorized by law to be contracted for. We think the contract was usurious, and under our statute appellee forfeited its right to enforce the collection of anything beyond the principal debt. Rev. Stats., art. 2979; Fisher v. Hoover, 21 S. W. Rep., 930.

It is urged, that if the interest contracted for was illegal, then a failure to pay the installments could not be treated as a default authorizing appellee to declare the entire debt to be due, and for this reason the suit was prematurely brought, the note not being due. We do not think this proposition sound. The monthly installments provided for in the note were the consideration upon which the work and material were furnished to go into the improvements; and appellants can not be heard to repudiate the contract by refusing to pay the installments, and at the same time, claim under the contract the utmost limit of the contract time for payment before compensating appellee for the work and material furnished. When appellants repudiated the contract by failing to pay the installments, appellee had the right to sue upon the

contract, but its right to recover is limited by statute to the amount of the principal sued for, the entire interest being forfeited.

It is also insisted, that the 10 per cent attorney's fees can not be recovered and enforced as a lien upon the homestead. Such attorney's fees are not embraced within the exceptions named in the Constitution for which the homestead may be incumbered and subjected to force sale. It is not a liability for which the parties may contract and incumber the homestead. They may contract in a particular way, and incumber the homestead for work and material furnished in improvements upon the homestead. It is held, that attorney's fees provided for in a note, when the contingency happens which renders them a liability, become a part of the obligation, and the security provided for the principal must be treated also as security for such attorney's fees. The principle is recognized in Neese v. Riley, 77 Texas, 348; Garrett v. Bank, 79 Texas 133; Stansell v. Cleveland, 64 Texas, 660, and other cases. This proposition is clearly right where the parties are authorized to incumber the property generally to secure their obligations; but when the property can not legally be incumbered, except for certain purposes specified in the Constitution, a liability not embraced in such purposes can not become by contract a charge upon the property on account of the fact that it is coupled with another obligation with which the property may be charged.

We are of the opinion that appellee had the right to recover the attorney's fees, but that no lien upon the homestead existed to secure the payment of such attorney's fees.

If appellee will, within twenty days, remit all the judgment recovered below in excess of $2080 of the principal, and $208 as attorney's fees, the judgment will be reformed and affirmed, at appellee's cost, foreclosing the lien upon the homestead for the $2080, and giving a personal judgment for the $208 attorney's fees, the judgment to bear the legal rate of interest. If the remittitur is not entered within the time stated, the judgment will be reversed and the cause remanded.