FINLEY et al. v. WAKEFIELD.
(No. 7460.)

(Court of Civil Appeals of Texas. Dallas. March 11, 1916.)

1. BILLS AND NOTES ⟐452(1) — PURCHASE FROM BONA FIDE HOLDER—PURCHASE FOR SPITE.

The legal and equitable owner and holder of a note, given to secure advancement of the purchase price of land, by indorsement and written transfer and assignment from the assignee of the original payee, for valuable consideration, could sue the makers, though he purchased the note for spite and not for profit or in the ordinary course of trade.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. ⟐452(1).]

2. HOMESTEAD ⟐81—INTEREST SUBJECT.

When a guardian's sale of land to husband and wife was confirmed by the county court, the title vested substantially in the purchasers, subject to the payment of the purchase money, who, before the execution and delivery to them of deeds by the guardian and a ward, had such an interest in the land that they could impress a homestead upon it, since the homestead right may attach to an equitable estate, or an estate for life, or even a leasehold interest, while the confirmation by the court of the sale related back to and conveyed title from its date.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 114–118; Dec. Dig. ⟐81.]

3. HOMESTEAD ⟐96—LIEN FOR ATTORNEY'S FEES.

Where a vendor of land requires the purchaser to stipulate in the original purchase-money note for the payment of attorney's fees if the note is not paid at maturity, and it is placed in an attorney's hands for collection, a lien on the land is created by the obligation to pay fees, which cannot be defeated by the subsequent establishment of a homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 147–153; Dec. Dig. ⟐96.]

4. HOMESTEAD ⟐96—LIEN FOR ATTORNEY'S FEES.

Under the Constitution, protecting the homestead of a head of a family from forced sale for the payment of all debts except for the purchase money, etc., where buyers of land from a guardian, the sale being subsequently confirmed by the county court, gave a purchase-money note, stipulating for attorney's fees, which was subsequently renewed, the notes having been given subsequent to the fixing of the buyers' homestead upon the land, and the original contract not having stipulated for attorney's fees, such fees could not be made a charge upon the land, since, when homestead property cannot be le-

gally incumbered, except for certain purposes specified, a liability not embraced in such purposes cannot become by contract a charge upon the property because coupled with another obligation with which the property may be charged.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 147–153; Dec. Dig. ⟐96.]

5. GUARDIAN AND WARD ⟐81 — ORDER OF SALE OF LAND—AUTHORITY OF COURT—PRESUMPTION.

In the absence of contrary proof, every fact necessary to support the authority of the county court to make an order of sale, directing a guardian to sell the wards' land, and to confirm the sale made thereunder, must be presumed.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 334–336; Dec. Dig. ⟐81.]

6. GUARDIAN AND WARD ⟐108 — SALE OF LAND BY ORDER OF COURT—TITLE OF WARD.

Where a county court ordered the sale by a guardian of her wards' lands, such sale, and its confirmation, passed title to the buyers, subject only to the payment of the unpaid purchase money, leaving no title in a ward or her husband.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 369, 395–398; Dec. Dig. ⟐108.]

7. GUARDIAN AND WARD ⟐98 — SALE OF LANDS—CONSUMMATION.

Where the court's order of sale authorized a guardian to sell the wards' lands for cash or half cash and balance on credit as to her should seem best for the interest of the estates of the minors, and the buyers, instead of paying a part of the purchase price cash and executing their notes for the balance, as originally agreed with the guardian, gave their note to a third person, who furnished the purchase money in cash to the guardian, the sale, as reported to the court and confirmed by it, was carried out, and the buyers acquired title through the confirmation, and not through a deed from a ward thereafter executed.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 369; Dec. Dig. ⟐98.]

8. BILLS AND NOTES ⟐445 — ELECTION TO DECLARE DUE.

Where the assignee of a note, given to secure the advancement by the payee of the price of lands purchased by the makers, sold in his turn, with the understanding that the suit instituted by him thereon should be dismissed, its dismissal did not set aside or annul his previous election to declare the entire note due for nonpayment of interest, or estop his transferee from such election and declaration after he purchased.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1311–1329; Dec. Dig. ⟐445.]

9. JUDGMENT ⟐675(2)—BINDING FORCE ON ONE NOT A PARTY.

Where a bank, to which a note was delivered as collateral security, returned the same to the pledgor or his counsel that suit might be brought upon it by the pledgor, an attorney of the bank bringing and prosecuting the suit to judgment, the judgment rendered was binding on the bank, and estopped it to maintain a suit on the same cause of action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1191; Dec. Dig. ⟐675(2).]

10. APPEAL AND ERROR ⟐1036(3)—IMMATERIAL ERROR.

In suit on a note, where the judgment, under the circumstances, was binding on a bank not a party, error of the court in declining to

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

continue the case to make the bank a party was immaterial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4071; Dec. Dig. ⊕⇒1036 (3).]

11. HUSBAND AND WIFE ⊕⇒238(3) — JUDGMENT NOT PERSONAL AGAINST WIFE.

In suit on a note renewing a note given by the purchasers of land at guardian's sale to secure the advancement of the purchase price by the original payee, judgment decreeing that plaintiff recover of the purchasers, husband and wife, the amount sued for, with foreclosure of liens, and directing that, if the property condemned to pay the judgment should not sell for enough to satisfy it, plaintiff should have execution against the husband for the balance, but that no execution should ever issue against the wife, was not in proper form for a judgment other than personal against the wife.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 855; Dec. Dig. ⊕⇒238(3).]

Appeal from District Court, Grayson County; M. H. Garnett, Judge.

Suit by John T. Wakefield against A. P. Finley and another. From a judgment for plaintiff, defendants appeal. Reversed in part, reformed in part, and otherwise affirmed.

C. B. Randell and J. W. Finley, both of Sherman, for appellants. Wolfe & Wood, of Sherman, for appellee.

TALBOT, J. On April 11, 1914, appellee filed suit on note, dated October 6, 1909, signed by appellants and payable to H. O. Head, or order, five years after date, for the sum of $1,260, with interest at the rate of 8 per cent. per annum, and stipulating that if the same was placed in the hands of an attorney for collection, the makers agreed to pay 10 per cent. on the amount as reasonable attorney's fees. The note sued on was given in renewal and extension of a certain other note, dated August 25, 1903, signed by appellants, payable to the order of W. H. O'Neal as trustee, five years after date, for the sum of $1,200, with interest at the rate of 8 per cent. per annum from date, and 10 per cent. attorney's fees if placed in the hands of an attorney for collection. The said W. H. O'Neal, trustee, for a valuable consideration, transferred and assigned said note to H. O. Head, to be held by him as security for payment of the note sued upon, and thereafter, on the 16th day of April, 1914, the said H. O. Head, by written transfer, sold and conveyed said note to appellee. The note was secured by a vendor's lien, as well as by a deed of trust, executed by appellants on the land described in plaintiff's petition, and the interest on said note, according to its terms, was payable annually, on the 6th day of October of each year, and the deed of trust stipulated that if default was made in payment of any installment of interest thereon, when due, that the same could, at the option of the holder, be declared due and payable. Appellants had failed to pay certain installments of interest due on said note, and H. O. Head,

who was then the legal and equitable holder and owner of the note, declared the same due, and brought suit thereon. The appellee then purchased the note, and H. O. Head then dismissed his suit. After acquiring said note, appellee borrowed $1,000 from the Sherman Loan & Trust Company, and placed the note with it as collateral security for such loan, but for the purpose of bringing suit upon it said company returned said note to appellee. Appellee, after purchasing the note, ratified the act of said Head in declaring the note due, and further exercised his option of declaring the same due and payable, according to the terms of said note and the authority conferred upon him as the holder thereof, by said deed of trust, and brought this suit.

The principal matters of defense were: First, that the note sued on and the deed of trust given on the land involved in the controversy were not obtained in the usual course of business nor for profit or business reasons, but for spite, and that appellee was estopped from claiming the attorney's fees sought to be recovered; second, that the appellee had no lien on said land for the attorney's fees claimed in his petition, because said land, at the time the original note was given to W. H. O'Neal and at the time the renewal note sued on was executed, which provided for the payment of attorney's fees, was, and had been for some months, the homestead of appellants. The property described in appellee's petition belonged to two minor children, Lula Sophia Matthews and Paul Matthews, and Mrs. M. T. Brown was their guardian. Mrs. Brown, as such guardian, made application to the county court of Grayson county, Tex., for an order to sell said property. On January 17, 1903, this application was granted, and Mrs. Brown, by order of the court duly made, was authorized and directed to sell the property for cash or half cash and the balance on credit, not to exceed four years, as to her should seem best for the interest of said estate. On June 4, 1903, said guardian reported to the court that she had sold the property to Eudora T. Finley, one of the appellants, at private sale, on May 15, 1903, for $1,600, one-half thereof to be paid cash and the remainder in equal installments, payable on or before one, two, and three years from date of said sale, each secured by note bearing 10 per cent. interest from its date, and by vendor's lien on said premises. On June 11, 1903, said sale was approved and confirmed by the court, and Mrs. Brown, as guardian of the estates of said minors, was ordered to make deed to the purchaser, Mrs. Eudora Finley, upon her compliance with the terms of the sale. The appellants were, at the time of all the transactions in question, husband and wife, and the property was purchased with the intention of making it their home, and before or about the time of the

confirmation of the sale by the county court they moved onto it, and continuously since that date have occupied, used, and claimed it as their homestead. In making the purchase of the property from the guardian of the minors, appellants did not contract or agree to pay any attorney's fees whatever, and the order of sale did not require that the purchaser agree to pay attorney's fees in any event. At some time, the date of which the record does not disclose, but prior to the making of any deed by the guardian, the minor, Lula Sophia Matthews, intermarried with Charles E. Hipolite. On the 25th day of August, 1903, Mrs. Brown, as guardian, executed and delivered to appellant Mrs. Eudora Finley a deed for the land in question. This deed purports to have been made by virtue of the order of sale granted to Mrs. Brown as guardian of the Matthews children, the sale to Mrs. Eudora Finley, and the subsequent confirmation thereof by the county court, and contains the following recitations:

"And whereas said purchaser has elected to pay and has paid the entire purchase money: Now therefore, in consideration of the premises and the payment of the entire purchase money as follows: Four hundred dollars ($400.00) paid by Mrs. Eudora T. Finley and received by me for Lula Sophia Hipolite, formerly Lula Sophia Matthews, and twelve hundred dollars ($1,200.-00) paid by W. H. O'Neal, trustee, and for which said Mrs. Eudora T. Finley and her husband, A. P. Finley, have executed their certain promissory notes, payable five years after date, with the privilege of paying the same at the end of two years or at the end of any year after said two years and before five years, interest payable semiannually at the rate of 8 per cent. per annum, and providing for 10 per cent. attorney's fees, and to secure the payment of said note the vendor's lien is hereby retained and the grantor herein does hereby sell and convey to the said W. H. O'Neal, trustee, the superior title and vendor's lien given by law to further secure said note, which is also further secured by the grantee herein, joined by her said husband, executing their certain deed of trust to secure the said W. H. O'Neal as trustee, I, Mrs. M. T. Brown, guardian as aforesaid, have granted, sold," etc.

Following the foregoing recitations is the habendum clause, the description of the property, and this provision:

"It is expressly understood, however, that the vendor's lien is retained upon said premises and improvements, to W. H. O'Neal as above specified, until the note above mentioned and all interest thereon, is fully paid, according to its tenor and effect."

On the same day that Mrs. Brown executed the deed just referred to, Mrs. Lula Sophia Hipolite, joined by her husband, also executed and delivered to appellant Mrs. Eudora Finley a deed to said property, which, omitting the description of the land, the habendum and warranty clauses, and formal parts, is as follows:

"Know all men by these presents, that we, Lula Sophia Hipolite, formerly Lula Sophia Matthews, joined by her husband, Charles E. Hipolite, of the county of Jefferson, state of Arkansas, in consideration of the sum of one thousand six hundred dollars ($1,600.00) paid to Mrs. M. T. Brown, guardian of the estate of said Lula Sophia Matthews and Paul Matthews, as follows: Four hundred dollars ($400.00) paid by Mrs. Eudora T. Finley to said guardian for me, and the sum of one thousand, two hundred dollars ($1,200.00) paid said guardian by W. H. O'Neal, trustee, and for which said Mrs. Eudora T. Finley and her husband, A. P. Finley, have executed their certain promissory note payable five (5) years after date with the privilege of paying the same at the end of two (2) years, or at the end of any year after said two (2) years and before five (5) years, interest payable semiannually at the rate of eight per cent. per annum, and providing for ten per cent. attorney's fees, and to secure the payment of said note a vendor's lien is hereby retained and the grantors herein do hereby sell and convey to said W. H. O'Neal, trustee, the superior title and vendor's lien given by law to further secure the said note, which is also further secured by the grantee herein, joined by her said husband, executing their certain deed of trust to secure the said W. H. O'Neal as trustee, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said Eudora T. Finley of Grayson county, Texas, as her sole and separate property the undivided one-half interest of the said Lula Sophia Hipolite in and to that certain tract or parcel of land situated in the city of Sherman in Grayson county, Texas, and being part of the J. B. McAnair survey. Said land having been the property of the estate of Lula Sophia Matthews and Paul Matthews, minors, guardianship proceedings on which estate is pending in the county court of Grayson county, Texas, by order of which court entered on the 17th of January, 1903, the guardian of said estate, Mrs. M. T. Brown, was ordered to make sale of said property, and such sale was accordingly made to said Eudora T. Finley and was duly confirmed by said court and this deed is intended to convey to said Eudora T. Finley all interest of said Lula Sophia Hipolite and Charles E. Hipolite in said property. But it is expressly agreed and stipulated that the vendor's lien is retained in favor of said W. H. O'Neal against the above-described property, premises and any improvements until said note and all interest thereon is fully paid according to its face, tenor and effect, when this deed shall become absolute."

These deeds were delivered to appellants at the same time and were recorded in the deed records of Grayson county.

The case was tried before the court without the aid of a jury, and the trial resulted in a judgment in favor of appellee against both appellants for the sum of $1,728.80, being the amount of the principal, interest, and attorney's fees represented by the note sued on, with foreclosure of the liens claimed by appellee on the land described in appellee's petition, and directing that an order of sale be issued, commanding the sheriff of Grayson county to sell said land and apply the proceeds of such sale to the payment of the judgment. The judgment further provided that if the land did not sell for enough to satisfy the same, appellee have execution against A. P. Finley, but that no execution ever issued against Mrs. Eudora Finley.

[1] The first assignment of error complains of the court's action in sustaining appellee's demurrer to that portion of appellant's petition charging that the note in suit was not obtained by appellee for profit, or in the ordinary course of trade, but for spite. The court did not err in this ruling. If the appellee was the owner and holder of the note

sued on, it was immaterial, so far as his right to sue thereon is concerned, whether he obtained the same for profit or in the ordinary course of trade or for spite. He alleged that he was the legal and equitable owner and holder of the note, by indorsement and written transfer and assignment from H. O. Head, for a valuable consideration, and these allegations entitled him to maintain the suit, regardless of the motives that actuated him in purchasing the note.

Assignments 2 and 3, in so far as they assert that the court erred in not finding that appellants had not agreed to pay an attorney's fee, nor agreed that any of the papers should stipulate for such fee, will be overruled. The evidence very conclusively shows that the note executed and delivered by appellants to W. H. O'Neal for a part of the purchase money of the land involved in this suit and the note sued upon, which was given in renewal of said O'Neal note, provided for the payment of 10 per cent. attorney's fees, if placed in the hands of an attorney for collection, and that such provision was made with the knowledge and consent of appellants.

By more than one assignment of error it is asserted by appellants, in substance, that the amount of the attorney's fee allowed appellee, and included in the judgment rendered in his favor, was no part of the original purchase price agreed to be paid for the land involved in this suit; that the first time appellants promised or agreed to pay an attorney's fee, in the event the deferred payments for said land were not made when they became due, was when they executed the note for $1,200 to W. H. O'Neal, on the 25th day of August, 1903, which provides for such fee; that before and at that time said property was, and continuously since has been, the homestead of appellants, and the court erred in making the amount of said attorney's fee a charge against said property and in foreclosing liens therefor.

[2] The assertion in the assignments to which we refer, to the effect that the first time appellants, in the transactions out of which this controversy arose, agreed to pay an attorney's fee, was on August 25, 1903, when the $1,200 note stipulating therefor was executed and delivered to W. H. O'Neal, is clearly borne out by the record, and if before and at the time the stipulation for the payment of attorney's fees was made the appellants had acquired such an interest in or title to the land in controversy as authorized the establishment of a homestead upon it, then the evidence is practically conclusive that it constituted the homestead of appellants when the agreement to pay attorney's fees was entered into. As stated in a former part of this opinion, the order of the county court, authorizing and directing the guardian of the minors, Lula Sophia Matthews and Paul Matthews, to sell the land, did not require her to exact of the purchaser thereof an agreement to pay attorney's fees, and no such agreement was exacted or required of appellants or entered into by them with said guardian. The first time any such agreement was made was when a stipulation to that effect was incorporated in the note made by appellants to W. H. O'Neal August 25, 1903. This was some months after the guardian had been granted an order to make sale of the property, the sale thereof to appellants and the confirmation of said sale by the court. There was then no promise or agreement included in appellant's original contract of purchase to pay attorney's fees, and the first agreement to that effect was made, as stated, when the $1,200 note payable to W. H. O'Neal was executed on the 25th day of August, 1903. On the issue of homestead vel non the facts are undisputed. The appellants bought the property with the intention of making it their homestead, and moved upon it prior to or about the time the sale by the guardian to them was confirmed by the probate court of Grayson county, and ever since that time they have occupied, claimed, and used it as such. The questions then are: First, did appellants acquire, before the execution and delivery to them of the deeds made by Mr. and Mrs. Hipolite, and by Mrs. Brown as guardian, on August 25, 1903, by the sale to them by said guardian and confirmed by the court, such an interest in or title to the land involved in this litigation as that the homestead character could be impressed upon it? and, second, did the attorney's fee, provided for in the note executed and delivered by appellants to W. H. O'Neal on the 25th day of August, 1903, and which was likewise provided for in the renewal note sued on, constitute a part of the purchase money agreed to be paid for the land, or the obligation assumed by appellants, against which the homestead claim of appellants could not prevail? The first question, we think, should be answered in the affirmative and the second in the negative. In Wheatley v. Griffin, 60 Tex. 209, it is said:

"There is nothing in the Constitution or laws of this state which prevents the homestead right of the wife from attaching to any interest in land which may be owned by the husband or wife, or by the community, and be used as homestead; and the great current of authority is to the effect that the homestead right will attach to an equitable estate, an estate for life, or even to a leasehold interest."

When the sale made by the guardian, Mrs. Brown, to the appellants was confirmed by the decree of the county court of Grayson county, the title of the land vested substantially in appellants, subject, of course, to the payment of the purchase money, and the execution of the deed, on August 25, 1903, by Mrs. Brown as guardian, was at most but the formal evidence of the title vested by such decree of the court. Rock v. Heald,.

27 Tex. 523. Prior to the date of this deed, and about the time of the confirmation decree referred to, appellants moved upon the land and dedicated it to homestead purposes. It was not essential to the attaching of homestead rights that the fee to the land had passed, or that the purchase money had been paid, although the land remained subject to the vendor's lien. The confirmation by the county court of the sale made by the guardian to appellants under its order related back to and conveyed title from the date of such sale. Edwards v. Gill, 5 Tex. Civ. App. 203, 23 S. W. 742. It is thus very well established by the decisions of this state that by the order of sale, the sale and its confirmation by the court, appellants acquired such title or interest in the land in question from the date of the sale as gave them the legal right to fix their homestead upon it, and the evidence is without dispute that about said date they designated it by use and occupancy as such. At the time, then, that appellants signed the note of $1,200 payable to W. H. O'Neal, for the deferred payment of purchase money for the land and in which for the first time attorney's fees were agreed to be paid, the land constituted the homestead of appellants.

[3, 4] The second question remains, namely, did the attorney's fee stipulated for in the O'Neal note and carried into the renewal note sued on constitute a part of the purchase money agreed to be paid for the land, or the obligation of appellants, against which their homestead claim could not prevail? In other words, did there exist for the payment of such fee a lien upon the land superior to the homestead rights of appellants? It is doubtless true that where a vendor of land requires the purchaser to stipulate, in the original note executed for the purchase money, or a part thereof, for the payment of attorney's fees in the event the note is not paid at maturity and is placed in the hands of an attorney for collection, a lien is created by the obligation which cannot be defeated by the subsequent establishment of a homestead upon the land. In such a case the judgment of foreclosure may embrace the amount due as such fees. Garrett v. Interstate Bank, 79 Tex. 133, 15 S. W. 224; Neese v. Riley, 77 Tex. 348, 14 S. W. 65; Green v. Johnson, 44 S. W. 6. But when provision is not made for attorney's fees in the original note given for the purchase money, and a renewal note is taken after the property has become the homestead of the purchaser, with stipulation for attorney's fees, no lien is thereby created for such fees superior to the homestead claim. Bullard v. Mayne, 49 S. W. 522. The Constitution of this state protects the homestead of the head of a family—

"from forced sale for the payment of all debts except for the purchase money thereof, or for part of such purchase money, the taxes due thereon, and for work and material used in constructing improvements thereon; and in this last case only when the work and material are contracted for in writing with the consent of the wife, given in the same manner as is required in making sale of the homestead."

The attorney's fees sought to be recovered in this suit, as will be seen, are not embraced within the exceptions named in the Constitution, for which the homestead may be incumbered, and, although the promise to pay same is included in the note given W. H. O'Neal and in the renewal note payable to H. O. Head upon which this suit is founded, still as this promise was not made in the original contract of purchase, but subsequent to the fixing of appellants' homestead thereon, they cannot be made a charge upon the land. In Walters v. Loan Association, 8 Tex. Civ. App. 500, 29 S. W. 51, this court said that the proposition announced in Neese v. Riley, supra, and similar cases—

"is clearly right where the parties are authorized to incumber the property generally to secure their obligations; but when the property cannot legally be incumbered, except for certain purposes specified in the Constitution, a liability not embraced in such purposes cannot become by contract a charge upon the property on account of the fact that it is coupled with another obligation with which the property may be charged."

We adhere to this view, and as the property in question constituted the homestead of appellants at the time they first contracted to pay attorney's fees, the same did not become a charge upon said property because coupled with their obligation to pay the deferred payment of $1,200 purchase money. The trial court therefore erred in ordering the property sold for the payment of such fees.

[5, 6] That the minor Lula Sophia Matthews had intermarried with Charles E. Hipolite prior to the time her guardian conveyed the land to appellants, and that she, joined by her husband, also conveyed said land to appellants, does not alter the case. The evidence shows that this marriage occurred before the date of the deed executed to appellants by the guardian, Mrs. Brown, but whether before or subsequent to the date of the order of sale granted by the county court, the sale and confirmation under which said deed was made, does not appear. That the guardianship was still pending at the date of said order of sale, said sale, the confirmation thereof, and when the deed of said guardian was executed and delivered is not controverted. If the minor Lula Sophia Matthews was married to Hipolite prior to the time the order of sale was granted, or the date of its confirmation, it does not so appear. In this state of the evidence the validity and binding effect of the county court's orders upon Mrs. Hipolite cannot be questioned, even though it should be admitted, which is not done, that said orders would have been ineffectual for the purpose intended had it been shown that her marriage occurred prior thereto. In the absence

of proof to the contrary, every fact necessary to support the authority of the county court to make the order of sale, directing the guardian to sell the land and to confirm said sale, must be presumed. It not being shown by the evidence that Lula Sophia Matthews intermarried with Charles Hipolite before the order of the county court was made directing the guardian to sell, or the date of the sale to appellants, or confirmation of said sale, the presumption will obtain, for the purpose of sustaining the validity and legal effect of said orders, that such marriage took place thereafter. The effect of the county court's order of sale, the sale to appellants by the guardian, and the confirmation of said sale passed the title of land to appellants subject only to the payment of the unpaid purchase money, and left no title in Mrs. Hipolite, or her husband, as a subject of conveyance by them, and the deed given by them to appellants at the date of the guardian's deed cannot have the effect of fixing upon the land conveyed a charge for the attorney's fees claimed.

[7] Nor do the facts that appellants entered into an agreement with W. H. O'Neal to furnish them $1,200 of the purchase money, giving him their note therefor, and electing in view thereof to pay all cash to the guardian for the land, instead of paying a part of the purchase price cash and executing their notes for the balance, as authorized by the order of sale granted to the guardian, materially affect the question. The consummation of the sale of the land in that manner was, to say the least, as favorable to the minors and the estates represented by the guardian as would have been a strict compliance with the original terms of sale as agreed on by the appellants and the guardian. The order of sale authorized the guardian to sell the property for cash or half cash and balance on credit as to her should seem best for the interest of the estates of the minors, and we fail to see how it can fairly and reasonably be said as we understand appellee does in effect, that the sale as reported to the court and confirmed by it was never carried out, and hence Mrs. Finley did not acquire title by reason of the confirmation of the sale reported by the guardian, but by reason of the deed made by Mrs. Hipolite and her husband, upon the therein expressed consideration of $400 cash paid by Mrs. Finley to Mrs. Brown as guardian and $1,200 paid said guardian by W. H. O'Neal, trustee, and for which said last-named sum Mrs. Finley and her husband, A. P. Finley, executed their promissory note, providing for 10 per cent. attorney's fees, etc. Mrs. Finley acquired the title of the land by reason of the order of sale, the sale to appellants, and the confirmation of that sale by the court, and the conveyance from Mrs. Hipolite and her husband was ineffectual to vest the title thereof in her, as she then had no title to convey; and

neither the said deed nor the transactions between appellants and W. H. O'Neal recited therein operated to fix as a charge upon the property therein attempted to be conveyed the attorney's fees stipulated in the note to O'Neal to be paid.

[8] The contention of appellants, to the effect that the court erred in not finding that by a valid agreement, entered into between appellants and H. O. Head while the said Head owned the note sued on and during the pendency of the suit instituted thereon by the said Head, there was an extension of time, for the payment of the interest due on said note, and hence a waiver of the right to declare the note due for default in the payment of such interest, which was binding on appellee, will be overruled. The evidence is wholly insufficient to show that any agreement for such an extension was made; and the sale of the note sued on to appellee, with the understanding that the suit instituted by H. O. Head was to be dismissed, and its dismissal, did not have the effect to set aside or annul the election of H. O. Head to declare the entire note due under the terms of the contract for nonpayment of interest, or estop the appellee from such election and declaration after he purchased the note.

[9, 10] It is further contended that:

"The court erred in not finding that the Sherman Loan & Trust Company had an interest in the subject-matter of the suit and was a necessary party."

This contention is not believed to be well taken. As pointed out by appellee's counsel, the only interest which the Sherman Loan & Trust Company ever had in the note sued on was acquired by appellee's delivering the same into its possession as collateral security, and the evidence shows without contradiction that before this suit was instituted, it was returned to appellee or his counsel, not only with knowledge that suit would be brought upon it by appellee, but for that express purpose. One of the attorneys of said company brought and prosecuted the suit to judgment, and there is no pretense that it was not fully aware of the institution and pendency of this suit. Under these circumstances the judgment rendered on the note is binding on the Sherman Loan & Trust Company, and will estop it from maintaining a suit on the same cause of action. This being true, there was no material error on the part of the court, if any at all, in declining to continue the case for the purpose of making said company a party to the suit.

[11] As shown in our statement of the nature and result of the suit, the trial court decreed that the appellee recover of appellants, A. P. Finley and his wife, Mrs. Eudora Finley, the amount sued for, with foreclosure of liens, and directed that if the property condemned to pay the judgment should not sell for enough to satisfy the same, appellee have

execution against A. P. Finley for the balance, but that no execution should ever issue against Mrs. Eudora Finley. This judgment is treated by appellants as a personal one against Mrs. Finley and assigned as error. It may be that since the judgment provides that no execution shall ever issue against Mrs. Finley, it should not be regarded as a personal one against her, but we do not approve of the form of the judgment, and it will be reformed so as to relieve it of the objection urged by appellants.

For the reasons indicated, the judgment of the court below, in so far as it forecloses the lien claimed by appellee and orders the property described in appellee's petition sold for the payment of the amount of the attorney's fees recovered, will be reversed, and judgment here rendered denying a foreclosure of said lien and condemnation of said property for the payment of such fees. The judgment will also be reformed so as to deny a personal recovery for any amount against Mrs. Finley. In all other respects the judgment is affirmed.