upon a patient constituted a bodily injury through accidental means.

In Townsend v. Commercial Travelers' Mutual Accident Association, supra, the New York Court of Appeals held that death from septic poisoning from the voluntary use of a hypodermic needle was due to "accidental means."

The other cases cited support the conclusion reached by us. We are aware that there are cases, like that of Ramsey v. Fidelity & Casualty Co., 143 Tenn. 42, 223 S. W. 841, 13 A. L. R. 651, which would support a holding directly contrary to that made by us. In fact, there are two clearly defined lines of authorities on the question here involved. Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 61. The conclusion reached by us, however, is the one consistent with the previous decision of this court in Bryant v. Continental Casualty Co., supra, and is, we believe, sound in principle and in harmony with the best-reasoned cases.

The opinion of the Court of Civil Appeals on all the questions involved is manifestly correct, and we deem further discussion unnecessary. The judgment of the Court of Civil Appeals is affirmed.

**AMUNY v. SEABOARD BANK & TRUST CO.**
(No. 1032—5219.)

Commission of Appeals of Texas, Section B.
Jan. 22, 1930.

Howth, Adams & Hart of Beaumont, for plaintiff in error.

O. J. Todd, C. S. Pipkin, and A. D. Moore, all of Beaumont, and A. W. Dycus, of Port Arthur, for defendant in error.

SPEER, J. The sole issue presented in this case is the right of the defendant in error as holder of plaintiff in error's promissory note, to recover the stipulated attorneys' fees under the circumstances shown. The trial court denied the plaintiff a recovery for such fees, but this judgment was reformed by the Court of Civil Appeals so as to allow them. 6 S.W.(2d) 186.

The defense against such recovery was this:

That the note was an installment note payable in monthly sums containing the usual stipulation for 10 per cent. attorneys' fees "if this note is placed in the hands of an attorney for collection or if collected by suit"; that the defendant in error became the owner of the note after default, and never thereafter notified the maker that it would demand immediate payment or in any wise insist upon its right to mature the note and the attorneys' fees; that it had been the custom and practice of the prior holders of said note to permit the accumulation of several deferred and past-due payments, and thereupon the holder would notify the defendant, and all past-due installments would then be paid, and that such had been the custom and course of conduct prior to defendant in error's acquisition of the note; that the defendant in error purchased the note with the wrongful and malicious purpose of filing suit thereon without giving defendant notice, and did in fact file this suit without any notice whatsoever; that, had such notice been given, he would have paid the note in full and thus have avoided the necessity for paying attorneys' fees. He tendered an amount less the attorneys' fees.

It is elementary that an act which is

lawful within itself does not become actionable merely because it proceeds from an evil motive. If defendant in error, under the circumstances shown, was lawfully entitled to place the note in the hands of an attorney for collection or to file suit thereon, then that it did so for the wicked purpose of injuring or harassing the defendant cannot deprive it of that right or in anywise mulct it in damages for having done so.

There was long great uncertainty in this state as to the exact nature of the attorneys' fees clause, such as we are considering; it was contended, and many thought, it was in the nature merely of an indemnity against loss through collection. But the rule is now settled that the holder is prima facie entitled to recover the sums stipulated for as attorneys' fees upon the happening of the event, and if, in any case, there is any reason why the same should not be paid, it is a matter of affirmative defense. Lanier v. Jones, 104 Tex. 247, 136 S. W. 255; Eagle Lake, etc., Bank v. Robinson, 104 Tex. 166, 135 S. W. 372; McCaulley v. Farmers', etc., Bank (Tex. Civ. App.) 175 S. W. 728; Lock v. Citizens' Nat. Bank (Tex. Civ. App.) 165 S. W. 536; Rushing v. Citizens' Nat. Bank (Tex. Civ. App.) 162 S. W. 460; Beckham v. Scott (Tex. Civ. App.) 142 S. W. 80. Here the event provided for in the note having happened (that is, the note having been placed in the hands of an attorney for collection and suit having been brought thereon), the plaintiff holder was clearly entitled, in the absence of the affirmative issue tendered by the defendant, to a judgment for the attorneys' fees.

We think, notwithstanding the defense tendered and notwithstanding the verdict in effect supporting it, the plaintiff was entitled to such fees.

The plaintiff in error having solemnly contracted that, upon the event stated, he would pay attorneys' fees, is in no position to say that the law imposed upon defendant in error as the holder of said note the duty of further notifying him the terms of the contract would be enforced. The maturity of the attorneys' fees was not made to depend upon demand and failure to pay after maturity, or upon reasonable necessity for placing the note in the hands of an attorney or suing on the same, but rather the right thereto was made absolute in the event the note was placed in the hands of attorney or suit brought thereon. As early as Chase v. First National Bank of Cleburne, 1 Tex. Civ. App. 595, 20 S. W. 1027, it was held in a deed of trust sale that upon default in payment of the interest the holder, through his agent, had the right to elect to treat the principal debt due and to proceed to advertise and sell the property in payment. Following this, the rule was applied in Dieter v. Bowers, 37 Tex. Civ. App. 615, 84 S. W. 847, 849, wherein it was said:

"The effect of the default in the payment of the interest note in question for more than 60 days gave plaintiff (in the terms of the contract) the right to declare all the notes due and payable, and to proceed by suit to enforce their payment and to foreclose the lien. This was the equivalent, so far as the maturity of the notes is concerned, of making the notes due and payable at plaintiff's option, or giving him the option to declare them due and to bring suit. In cases where the contract was worded substantially as just stated the question has frequently been raised whether or not the notes matured and suit was authorized upon them unless the option was previously exercised, and notice thereof given the debtor; and the clear weight of authority is that this is not required. * * * The contract is to be enforced as the parties have made it. It had not provided any particular form or manner for declaring the notes due, but gave the owner and holder of the notes in general terms the right to declare them due, which he could do in any manner he saw fit. The filing of the suit was a declaration of that purpose." A writ of error was refused by the Supreme Court.

Of course, a case might arise where the holder, by his conduct, would estop himself to claim the attorneys' fees, but this is upon a different principle. If the maker was misled by the conduct of the holder into a delay in making payment, equity might relieve him against the fraud that would otherwise be perpetrated upon him through visiting a penalty for his having done that which the holder had induced him to do. But there is no pretense of estoppel in this case, and indeed there is nothing in the record to support an estoppel. It is not alleged that the defendant in error even had notice of the prior custom of its predecessors in title. See Astin v. Mosteller (Tex. Civ. App.) 152 S. W. 495, writ refused. Mere indulgence of the holder after default does not tend of itself to show an extension by contract, nor does it evidence any intention not to enforce the contract, according to its terms, for the right to enforce is continuous after the breach to the maximum period of limitation. It means nothing to say that common honesty, equity, and good conscience would require notice under such circumstances of an intention to enforce the contract.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.