C. NATALIA ET AL V. MATHAILDA WITTHAUS ET AL.

No. 7329. Decided January 31, 1940.
Rehearing overruled March 13, 1940.
(135 S. W., 2d Series, 969.)

Carl C. Runge, Conrad J. Landrum, Lawler, Wood & Childress, Ralph R. Wood, William E. Loose, Walter C. Clemons, Pat N. Fahey, J. V. Wheat, Chas. L. Terry, and B. C. Billingsley, all of Houston, and Carlos B. Masterson, Rucks & Enlow and Follett & Hill, all of Angleton, for plaintiffs in error.

The death of the grantor after he had conveyed the land in controversy or pursuant to the power of sale given in the deed of trust did not revoke said power of sale, and the same was binding upon his vendee, who was still living, and who was liable for and his property subject to the payment of the debt, and was a matter over which the probate court had no jurisdiction, the debt of the purchaser being separate and distinct from that of the grantor. Taylor v. Williams, 101 Texas, 388, 108 S. W. 815; Youngs v. Youngs, 26 S. W. (2d) 191; Freece v. Truskett, 128 Texas 220, 106 S. W. (2d) 675; Wiener v. Zwieb, 105 Texas 262, 147 S. W. 867.

Charles C. McRae, W. J. Howard and Williams, Lee, Sears & Kennerly, all of Houston, for defendants in error.

Under the deed of trust from the grantor to the Federal Land bank the power of sale was suspended by the death of the mortgagor eight months prior to the attempted sale under the said deed of trust and the sale was unauthorized. Robertson v. Paul, 16 Texas 472; Rogers v. Watson, 81 Texas 400, 403, 17 S. W. 29; 29 Tex. Jur. 972, sec. 135.

Geo. T. Burgess, of Dallas, Raymond Edwards and Samuel Peterson, both of San Antonio, Dan Moody and J. B. Robertson, both of Austin, and E. T. Chew, of Houston, all filed briefs as amici curiae.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

This suit is a formal action of trespass to try title, brought by defendants in error against plaintiffs in error for the recovery of two tracts of land in Brazoria County. Plaintiffs in error claim and possess the land through a sale made by a

trustee under power of sale given in a deed of trust to secure the payment of a note held by The Federal Land Bank of Houston. Decision of the first and most important question presented in the case requires either the approval or the disapproval of the holding made in the opinion written by Associate Justice Dibrell in Wiener v. Zwieb, 105 Texas 262, 141 S. W. 771, 147 S. W. 867.

The case was tried before the court without a jury and judgment rendered that defendants in error take nothing. Elaborate findings of fact were made. The Court of Civil Appeals, approving the dissenting opinion of Associate Justice Ramsey in Wiener v. Zwieb, reversed the trial court's judgment, rendered judgment for defendants in error for the title and possession of the land, and remanded the case for determination of the amount of damages for oil taken from the land and for accounting and adjustment of equities between the parties. 107 S. W. (2d) 998.

The facts material to decision of the question first presented are as follows: Title to the land as community property of himself and wife Mathilda was acquired by Max Witthaus through deeds which retained vendor's liens to secure purchase money notes. On June 3, 1919, after the purchase money notes and the superior title had been assigned and conveyed to The Federal Land Bank of Houston, Max Witthaus and Mathilda Witthaus, for the purpose of extending and rearranging the notes, executed and delivered to The Federal Land Bank of Houston their note in the principal sum of $2650.00, payable in 68 semi-annual installments, and executed also a deed of trust conveying the land to M. H. Gossett, trustee, to secure the payment of the said note. The grantors in the deed of trust expressly agreed to pay when due all taxes, charges and assessments legally levied against the land, and the deed of trust contained a paragraph by which it was provided that if any of the payments on the note should not be made when due, or if the grantors should permit any taxes or assessments on the land to become delinquent, or in case of a breach of any of the agreements or covenants made, the whole of the note, at the option of The Federal Land Bank of Houston or other holder thereof, should become immediately due and payable, and at the request of the holder of the note the trustee or his successor should sell the property at public auction. By deed dated June 27, 1925, Witthaus and wife conveyed the land to J. W. Hathaway, reserving, however, a 1/16 royalty interest. The grantee

assumed payment of the note held by The Federal Land Bank of Houston.

Max Witthaus died intestate September 20, 1927, leaving surviving him as his sole heirs his wife, Mathilda, and his two daughters, Ester W. Smith and Edna W. Keener, who with J. W. Hathaway and the husbands of said two daughters are the defendants in error here. At the time of the death of Max Witthaus he and his wife owned community property, in addition to the royalty interest in the land in controversy, but the value of such other community property was not shown on the trial. Witthaus and his wife owed when he died community debts other than that to The Federal Land Bank of Houston, but no evidence was offered proving or tending to prove that such other debts were not paid when the trustee's sale of the land in controversy was made. There has never been an administration in probate court of the estate of Max Witthaus and the time within which such administration might have been taken out elapsed more than two years prior to the filing of this suit.

The taxes assessed against the land for the years 1923 to 1927 inclusive were not paid, but became and remained delinquent. On account of such delinquency The Federal Land Bank of Houston exercised its option and declared the entire note for $2650.00 due and requested the trustee to sell the land in accordance with the provisions of the deed of trust. At the trustee's sale, which was made on May 1, 1928, The Federal Land Bank of Houston became the purchaser of the land for the sum of $2500.00, and M. H. Gossett, trustee, acting through his agent and attorney in fact G. A. Barth, conveyed the land to The Federal Land Bank of Houston, the conveyance reciting a compliance with the provisions of the deed of trust with respect to the default, the request for sale, the giving of notice, and the time and the manner of sale. The Federal Land Bank of Houston conveyed the land to plaintiff in error C. Natali on May 11, 1928, for a consideration of $3000.00, of which $1000.00 was paid in cash, the balance being evidenced by a promissory note payable on or before one year from its date. The plaintiff's in error other than Natali claim under Natali.

This suit was filed October 30, 1933, more than six years after the death of Max Witthaus and more than five years after the trustee's sale.

The Court of Civil Appeals held that at the time the trustee's sale was made, which was about eight months after the death of Witthaus, the probate court of Brazoria County was the exclusive agency through which the sale of the land

for foreclosure of the deed of trust lien could have been effectually made, and that the trustee's sale was for that reason void and passed no title.

The holding made in Wiener v. Zwieb, supra, is thus expressed in Associate Justice Dibrell's opinion:

"The Court of Civil Appeals, speaking through Justice Fly, in an elaborate and well considered opinion, holds the view that where there was no administration on the estate of the grantor and after the lapse of four years, the time within which an administration could be sued out, that a sale under the deed of trust after the death of the grantor and before the lapse of four years, was valid and passed title to the land conveyed, and we approve that holding."

The opinion contains the following more explicit statement as to the validity of the trustee's sale and the effect of the trustee's deed:

"The trustee's deed made after the death of the constituent and before the lapse of the time within which an administration migh have been sued out on the estate of the grantor, was valid and effective and passed the title to the land conveyed, subject only to be set aside by an administration for the payment of such preferred claims as might have existed under the law at the time and as such deed might have interfered with the orderly administration of said estate. Such deed made under the circumstances of this case was neither invalid nor in a state of suspense, except insofar as it might have interfered with the due execution of an administration of the estate of the deceased grantor in said deed of trust, but to the contrary said deed was valid and effective and upon its execution passed the title to the purchaser of said land at said sale against the heirs of the deceased and all other persons with the bare exception above stated."

Chief Justice Brown, writing on motion for rehearing in Wiener v. Zwieb, (supra) said that the court was not convinced that it erred in holding in the former opinion that a sale of real estate under a deed of trust within four years after the death of the mortgagor and before administration would be voidable and not void, and that, having reached upon further consideration the conclusion that the facts did not demand a decision of that issue, the Court would limit the opinion to the present case. Thereupon in a brief opinion he expressed the conclusion that the power of sale was not suspended by the mortgagor's death and that the trustee's sale vested title in

the purchaser because the land, being homestead, did not form, under the applicable statute, the act of August 15, 1870, any part of the estate of the deceased mortgagor and was not subject to administration by the probate court.

The Court did not withdraw the carefully prepared and well-reasoned opinion written for the majority by Judge Dibrell and did not in the opinion on rehearing express doubt as to its correctness. Judge Dibrell's opinion, until the decision of the instant case by the Court of Civil Appeals, has remained unchallenged except by Judge Ramsey's dissenting opinion. Furthermore, the holding made by the majority in that case was given express approval in a recent decision, Freece v. Truskett, 130 Texas 90, 94, 106 S. W. (2d) 675. In the case last cited a sale of land was made by a trustee, acting under the power given in a deed of trust, within four years after the death of the mortgagor and while his estate was being administered by the independent executor of the estate. There was no administration under the direction of the probate court and the four years allowed for such proceeding had expired more than four years before the suit was instituted. The Court held in answer to certified question that the trustee's sale was not void, basing its ruling upon two distinct grounds, the first of which was the holding of the majority of the Court in Wiener v. Zwieb. The opinion, written by Judge German and adopted by the Court, cites Wiener v. Zwieb and quotes with apparent approval that part of Judge Dibrell's opinion hereinbefore set out in which the Court's conclusion is stated to be that the trustee's deed, although made after the death of the mortgagor and before the lapse of the time within which an administration might have been sued out on his estate "was valid and effective and upon its execution passed the title to the purchaser of the land, subject only to be set aside by an administration for the payment of such preferred claims as might have existed under the law at the time and as such deed might have interfered with the orderly administration of said estate."

■■ We think that whatever doubt may have existed, on account of Judge Ramsey's dissenting opinion and Judge Brown's opinion on rehearing, as to the authoritative value of the conclusion expressed in Judge Dibrell's opinion in Wiener v. Zwieb has been removed by the recent approval given that conclusion in Freece v. Truskett, and that the said recent decision recognized the holding made in Judge Dibrell's opinion as the settled rule in this State. However, in view of the ruling of the Court of Civil Appeals in the instant case which, it should be said, was made before Freece v. Truskett was decided, and

on account of the insistence of defendants in error that the trustee's sale was void because made within four years after the death of Witthaus, we have carefully considered the several opinions in Wiener v. Zwieb and the authorities bearing upon the question under consideration. It is our opinion, based in the main upon the authorities cited and discussed and the reasoning contained in Judge Dibrell's opinion, that the fact that the trustee's sale in the instant case was made within four years after the death of Witthaus did not render the sale invalid either as to the interest in the land owned by Witthaus at the time of his death or as to the interest which had been conveyed to Hathaway, and this notwithstanding the absence of evidence showing whether there were or were not, at the time the trustee's sale was made, any creditors who might have demanded an administration of the decedent's estate.

The decision made by the majority of the Court in Wiener v. Zwieb as to the validity of the trustee's sale is supported by the same reasoning as that used in Solomon v. Skinner, 82 Texas 345, 18 S. W. 698, and in Taylor v. Williams, 101 Texas 388, 108 S. W. 815. In the Solomon case the owner of a note secured by vendor's lien filed suit in district court against the heirs of the deceased debtor for the enforcement of the lien when the jurisdiction of the probate court had not been invoked for settlement of the estate. It was held that the district court had the power to proceed to judgment and to order a sale of the land for the payment of the debt without contravening the policy of the probate laws. The Court pointed out in the opinion that creditors of the decedent could, at any time before the sale of the land under execution, arrest the proceedings by taking out letters of administration and draw the enforcement of the claim to the county court. But the existence of such unexercised right in the creditors would not affect the power of the district court to enforce the lien.

It was held in Taylor v. Williams, supra, that the pendency of administration by an independent executor neither extinguishes nor supersedes the power of sale of a trustee appointed by the testator. In answer to the argument that an estate which has been committed to the independent control of an executor is still within the scope of the general jurisdiction of the probate court in the sense that in certain contingencies that court may make some orders affecting it, or may take charge of and have it administered as other estates, the Court said:

"The authority-given to the Probate Court to make certain orders while the estate is being independently administered,

does not affect the question, and the taking of the administration out of the independent control of the executor and subjecting it to regular administration, as other estates, only determines the proper course of proceedings thereafter to be had. *The power in the court ultimately to assume such control no more negatives the prior existence of the power of sale than it negatives the right of action in the court of civil jurisdiction for the enforcement of claims. After the assumption of such control by the Probate Court both modes of procedure may be superseded by that prescribed in the probate law, but this does not prove that they were not authorized so long as the independent control of the executor continued."* (Our italics.)

In both cases, Solomon v. Skinner and Taylor v. Williams, the estates were within the scope of the jurisdiction of the probate court, but that court's jurisdiction had not been invoked and was not being exercised. And it was held in the one case that such potential jurisdiction, or the mere existence of the power to assume control, does not negative the right of action in the court of civil jurisdiction for enforcement of the lien, and in the other case that such potential jurisdiction or power to assume control neither extinguished nor superseded the power of sale given the trustee.

The death of Witthaus did not revoke the power of sale given in the deed of trust. The jurisdiction of the county court to administer the estate has never been invoked and the time within which such administration could have been sued out had elapsed when this suit was filed. The trustee's sale, therefore, did not interfere with the orderly enforcement of administration in the county court, for there has not been and cannot be now, an administration in that court. Under the two authorities above discussed, the existence in the probate court of a jurisdiction to assume control of the estate for administration, which was never invoked and never exercised, neither extinguished nor superseded the power of sale given the trustee by the deed of trust.

In our opinion the Court of Civil Appeals erred in holding that The Federal Land Bank of Houston, by its answer in a suit filed by the State against it and Hathaway for the collection of taxes for the years 1919 to 1926, elected its remedy against Hathaway and Witthaus and was estopped by such election from accelerating the maturity of the debt for nonpayment of taxes. That answer sets out a paragraph of the deed of trust, which authorizes the holder of the note to pay unpaid taxes and provides that any such payment shall be secured by

the deed of trust lien, and the answer prays that the bank have judgment against Hathaway and Witthaus for the amount it should have to pay and that the judgment be so worded as to subrogate it to the state and county. In addition to the paragraph with respect to taxes set out in the said answer, the deed of trust further provides that if the mortgagors "per mit any taxes or assessments on said land to become delinquent" the whole of the note secured by the deed of trust shall at the option of the holder immediately become due and payable.

It is shown by the findings of the trial court, supported by evidence, that the taxes levied and assessed on the land for the years 1923 to 1927, inclusive, were not paid when due and were permitted to become delinquent and that on account of that fact the Land Bank on March 15, 1928, exercised its option and declared the entire $2650.00 note due and requested the trustee to sell the land. The Land Bank did pay these delinquent taxes, but payment of them was made on May 15, 1928, which was after the trustee's sale and conveyance of the property to the bank. Thus it is apparent that the trustee's sale was not made for the collection of taxes paid by the Land Bank or for foreclosure of a lien on account of such payment. The trustee's sale was made for foreclosure of the lien securing the $2650.00 note which had become due by the bank's exercising its option to accelerate its maturity when the mortgagors permitted the taxes to become delinquent. The right to accelerate the maturity of the note for such reason was a reasonable provision to prevent the impairment of the lien securing the note by a superior lien securing unpaid taxes. In such state of facts the foreclosure by trustee's sale was not the exercising of a remedy for collection of taxes paid by the bank or for foreclosure of a lien securing a payment of taxes. Furthermore, even if the relief prayed for by the Land Bank in the tax suit and that sought in the foreclosure by trustee's sale could be regarded as coexisting remedial rights, the taxes for the year 1927 were not involved in the tax suit and the Land Bank in its answer made no election of remedy in respect to taxes for that year. Its right, therefore, to declare the note due on account of the moragagor's failure to pay taxes for 1927 before they became delinquent was not affected by its answer in the tax suit.

By several assignments of error the contention is made that the Land Bank waived its option to accelerate the maturity of the note, by reason of promising Hathaway that it would not mature the note if he made partial payment of the

taxes and by accepting such partial payment from Hathaway made in reliance upon the bank's promise, and that by like promise the Land Bank waived the acceleration after it had formally elected to exercise the option. The trial court found that as early as March, 1927 and several times thereafter the Land Bank requested Hathaway to pay the delinquent taxes for the years 1923 to 1927, and notified him at said times that unless he paid the taxes the bank would accelerate the maturity of the note and foreclose the deed of trust under the power of sale, and that Hathaway, although recognizing his liability therefor, failed to pay the taxes or any part of them. The court made the further finding:

"The Federal Land Bank of Houston at no time prior to the acceleration of the maturity of the amortization note and the foreclosure of its deed of trust formed or had any intention of relinquishing or waiving its right to accelerate the maturity of said note and have said deed of trust foreclosed under the power of sale for non-payment of taxes as the same became due and before same became delinquent. Nor did said bank or its agents or officers say or do anything which in law would constitute or amount to such a waiver. Nor did the words, acts or conduct of its agents or officers lead or induce plaintiffs or either of them to so believe, nor did plaintiffs or either of them act to their detriment in reliance on the belief that the bank had so waived its said right."

We have carefully examined all of the evidence in the statement of facts that has any bearing on the alleged waiver and find no evidence that contradicts or tends to disprove the foregoing facts found by the trial court. Hathaway, although present at the trial of the case, did not testify. His deposition was taken but neither party offered any portion of it in evidence. It is shown that the bank from March, 1927, to the latter part of January, 1928, repeatedly urged Hathaway to make payment of the delinquent taxes and that the only payment made by him was of the taxes for 1922 and a small balance due on taxes for years prior to 1922. This payment was made in the early part of October, 1927, or a short time before. There is no evidence that such payment was made in reliance upon any promise by the bank to waive, or postpone for any certain time, the acceleration of the maturity of the note. At the time the one payment was made Hathaway promised that he would pay taxes for another year within ninety days. On January 21, 1928, after the expiration of the ninety days the Land Bank reminded him that he had not kept his promise to

pay taxes for an additional year and told him that unless he made another substantial payment of taxes the bank would have to foreclose. Hathaway made no other payment.

There is evidence that G. A. Barth, after the bank had declared the entire note due, urged Mrs. Hathaway to make substantial payment on the taxes in order to stop the foreclosure, telling her that if she made such payment she could proceed with the amortization payments; but there is no evidence that any payment of taxes was thereafter made or that defendants in error either did or refrained from doing anything in reliance upon such representation, or that defendants in error were caused thereby to believe that without such subtantial payment acceleration would be waived or foreclosure postponed. In our opinion the option to accelerate was not waived, either before or after it was formally exercised.

Defendants in error contend that the sale under the deed of trust and the trustee's deed were invalid because the sale was made and the deed was executed by G. A. Barth, acting as attorney in fact for M. H. Gossett, trustee, rather than by Gossett in person. The deed of trust provides that if the trustee dies, removes from the state, becomes disqualified or refuses to act, the owner or holder of the note may appoint a substitute trustee by written instrument duly recorded, and that such substitute trustee shall have all of the rights, powers and duties of the trustee. It contains also the following provision: "And the said trustee or any substitute or successor trustee is hereby authorized and empowered to appoint an attorney in fact to act as trustee under him and in his name, place and stead, such appointment to be evidenced by an instrument signed and acknowledged by said trustee, substitute or successor; and all acts done by said attorney in fact shall be valid, lawful and binding as if done by said trustee, substitute or successor in person."

■ After M. H. Gossett, the trustee, had caused the notices of sale to be posted, he signed and acknowledged an instrument in writing, by which, and for the purpose of carrying out the provisions of the deed of trust and selling the property, he appointed G. A. Barth "my true and lawful attorney in fact to act for me and under me and in my name, place and stead, to sell the above described property in the manner provided for in the said deed of trust and in accordance with the law, and to make, execute and deliver to the purchaser thereof a proper deed of conveyance, and I do hereby ratify and confirm any and all such acts and things as my said attorney may law-

fully do in the premises." Barth made the sale and executed the trustee's deed as attorney in fact for M. H. Gossett, trustee. Gossett was not present at the sale. The argument made by defendants in error is that the deed of trust invests the trustee with discretion in making the sale and that the trustee cannot delegate such discretion to another. The position thus taken would be correct, had the deed of trust not given the trustee the power to delegate his authority. The express terms of the deed of trust above quoted confer upon the trustee authority to appoint an attorney in fact to act as trustee and declare that all acts done by such attorney in fact shall be valid and binding as if done by the trustee in person. The attorney in fact, therefore, was duly authorized to conduct the sale and to execute the deed to the purchaser. Hess v. Dean & Kesterson, 66 Tex. 663, 2 S. W. 727.

■ The use of the phrases "under him" and "under me" in the deed of trust and in the instrument appointing Barth attorney in fact did not require the personal presence of the trustee at the sale, for the language above quoted from the deed of trust, as well as that quoted from the instrument appointing the attorney in fact, clearly means that the acts of the attorney in fact in making the sale and executing the deed shall be as effective and binding as if performed by the trustee in person. No conflict exists between the power given the beneficiary to appoint a substitute trustee and that given the trustee to appoint an attorney in fact. The one is to be exercised by the beneficiary when the trustee dies, removes from the state, becomes disqualified or refuses to act. The other is to be exercised by the trustee when, although not disqualified and not unwilling to act, he needs, or believes he needs, the services of another in the performance of his duties.

Several other assignments of error questioning the validity of the trustee's sale are presented by defendants in error. All have been carefully considered and are overruled. To avoid extension of this opinion to unreasonable length, the points made by the assignments and the reasons for overruling them, will be stated briefly.

■ The acceleration of the mortgage note and foreclosure by trustee's sale, on account of the failure of the mortgagor to pay taxes, were authorized by the Federal Farm Loan Act of July 17, 1916, (12 U. S. C. A., Section 641-1019). The ninth subdivision of Section 771, Title 12, U. S. C. A., requires that the borrower undertake, by express covenant in his mortgage deed, to pay all taxes when due; and the tenth subdivision of

the same section requires the borrower to enter into an agreement that if he "shall be in default *in respect to any condition or covenant of the mortgage,* the whole of said loan shall at the option of the mortgagee become due and payable forthwith." (Our italics.)

■ The by-laws of The Federal Land Bank of Houson, offered in evidence, confer upon the executive committee of the Land Bank, subject to the supervision and control of the board of directors, various powers, among them being the power to declare any note due and to cause foreclosure of the lien securing it; and so the by-laws authorized the executive committee's action, evidenced by resolution of date March 15, 1928, by which it declared the note made by Witthaus due and directed the sale of the land by the trustee. While the board of directors has general supervision and control over the executive committee, it is not necessary for the board to give explicit or express direction for every act of the committee. Helms v. Home Owners' Loan Corporation, 129 Texas 121, 103 S. W. (2d) 128; San Antonio Land Bank v. Taylor, 129 Texas 335, 105 S. W. 650.

■ If it is true that some of the taxes assessed against the land were taxes on personal property and poll taxes and not lawfully charged against the homestead, such fact did not render the trustee's sale void. Most of the unpaid taxes were lawful charges. "A sale made under a deed of trust for a sum larger than the amount with which the property is properly chargeable is not void." W. C. Belcher Land Mortgage Co. v. Taylor, (Com. App.) 212 S. W. 647, 649; Groesbeck v. Crow, 85 Texas 200, 20 S. W. 49; State Mortgage Corporation v. Ludwig, 121 Texas 268, 48 S. W. (2d) 950. As has been shown, however, the trustee's sale was not for the collection of taxes or on account of payment of taxes made by the Land Bank. The foreclosure was for the collection of the note, the maturity of which was accelerated by reason of the mortgagor's failure to pay taxes. The right to accelerate maturity of the note arose whenever any taxes, lawfully assessed, were permitted to become delinquent. What is here said answers also the proposition that no valid contract lien could be created against the homestead to secure payment of taxes.

■ Another proposition advanced by defendants in error against the validity of the trustee's sale is that the provision in the deed of trust giving the option to accelerate the maturity of the note on account of failure to pay taxes is void as an ad-

ditional burden on the homestead of Witthaus and wife, there having been no such acceleration clause in either of the two deeds by which the land was conveyed to Witthaus. In support of this proposition defendants in error cited Finley v. Wakefield, 184 S. W. 755, which holds that a lien for attorney's fees against a homestead cannot be created in a contract renewing and extending purchase money notes unless the original notes provided for the payment of attorney's fees. The reason for the decision made in that case is that, as the agreement to pay attorney's fees was made after the property was acquired and had become homestead, the attorney's fees were not part of the purchase money but constituted a new, distinct and additional obligation, and that such obligation for attorney's fees is not embraced within the exceptions named in the Constitution for which the homestead may be encumbered.

A different principle is involved here. No new debt, no additional obligation secured by lien against the homestead was created or attempted to be created by that part of the deed of trust which gives the owner of the renewal note the option to accelerate its maturity upon the failure of the mortgagor to pay taxes. Such provision does not impose an additional burden on the homestead. It adds nothing to the debt secured by the existing lien; it merely relates to the time for the payment of that debt. The note for $2650.00 secured by the deed of trust was given in the renewal of the principal of the original purchase money notes secured by vendor's liens. The note and the deed of trust extended the time for payment of the debt far beyond the due dates of the original notes, at the same time giving the holder of the note the option to change the time of payment by accelerating the maturity if the mortgagor should fail to perform his obligation to pay taxes. The conclusion that the provision for acceleration is not void as an additional burden on the homestead is supported by Bellamy v. Oklahoma Farm Mortgage Co. (Com. App.) 278 S. W. 180. See also: Hall v. Hix, 297 S. W. 491 (application for writ of error refused); Jackson v. Bradshaw, 57 S. W. 878 (application for writ of error refused).

We overrule the assignments of error which present the contention that there was no effective acceleration of maturity of the note on account of the absence of evidence showing notice to the mortgagors of the exercise of the option and presentment of the note to them after its maturity was accelerated. Chandler v. Guaranty Mortgage Company, 89 S. W. (2d) 250; Dieter v. Bowers, 84 S. W. 847 (application for writ of error refused); Chase v. First National Bank of Cleburne, 20 S. W.

1027; Amuny v. Seaboard Bank & Trust Company (Com. App.) 23 S. W. (2d) 287.

■ There is no merit in the assignment which questions the validity of the trustee's sale because the notices of sale were posted by a deputy sheriff rather than by the trustee in person. The trial court found that the trustee M. H. Gossett advertised the land for sale by causing written notices to be posted at three public places in the county, one of which was at the courthouse door. This finding is supported by the recital in the trustee's deed to the effect that the trustee did advertise the land for sale in the manner required by the deed of trust and in accordance with the laws of the State and by the testimony of the deputy sheriff that he posted the written notices at three public places in the county, one at the courthouse door, one in the town of Freeport, and one in the town of West Columbia. From the recitals in the deed of trust to the effect that in case of sale all prerequisites to sale shall be presumed to have been performed, and that all statements of facts in any conveyance given under the deed of trust as to advertisement of sale, etc., shall be prima facie evidence of the truth of the facts stated, and from the recitals above referred to in the trustee's deed, the presumption arises that public notice of the sale was given as required by law and by the terms of the deed of trust. Adams v. Zellner, 107 Texas 653, 183 S. W. 1143; McFarlane v. Whitney, 134 Texas 394, 134 S. W. (2d) 1047, 8 TSCR 14. The testimony of the deputy sheriff is in accord with the presumption. There is no evidence in contradiction. It was not necessary that the notices be posted personally by the trustee. Roe v. Davis, 106 Texas 537, 172 S. W. 708; Adams v. Zellner, supra; Smith v. San Antonio Joint Stock Land Bank, 130 S. W. (2d) 1070 (application for writ of error refused).

We approve the trial court's conclusion, that "the conditions and prerequisites to the power of sale by the trustee were present and that the trustee had the power to sell and correctly and legally exercised said power and correctly and regularly held such sale." It is unnecessary to consider assignments in the application for the writ relating to collateral attack, bona fide purchaser and statutes of limitation.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court January 31, 1940.

Rehearing overruled March 13, 1940.