**Ralph R. GRESHAM et ux., Appellants,**

v.

**Charles P. McELROY, Appellee.**

**No. 13172.**

Court of Civil Appeals of Texas.

Houston.

Jan. 9, 1958.

Rehearing Denied Jan. 30, 1958.

Bernard Kay, Houston, for appellants.

M. S. Munson, Jr., Wharton, for appellee.

WOODRUFF, Justice.

Appellee, Charles P. McElroy, instituted this suit on October 19, 1956, in the District Court of Wharton County against appellants, Ralph R. Gresham and wife, Johnnie Gresham, alleging that he was the owner of a note dated April 13, 1956, executed by appellants for $8,961 payable to Colorado County Federal Savings and Loan Association or order, bearing 6% interest and payable at $90 per month beginning June 1, 1956, secured by a deed of trust executed by appellants creating a lien on Lot No. 5 in Block No. 3 in McCarson Subdivision in the S. F. Austin Grant in Wharton County, Texas. Appellee alleged that on July 31, 1956, the payee sold and transferred the note and lien to him by endorsement and written assignment for the sum of $8,940.50, and that on August 4, 1956, the original security being insufficient, appellants as additional security pledged and transferred to him in writing eight second lien notes together with the deed of trust liens securing same.

Appellee further alleged that appellants had failed to make the payments on the principal note and that he had declared it wholly due under its terms, and prayed judgment for the amount of the unpaid principal, interest and 10% attorney's fees together with a foreclosure of the liens securing the note.

Appellants went to trial on their First Amended Original Answer containing a general denial, a special denial that the note was delinquent, and other pleas in the nature of payment and estoppel which will be stated hereafter in greater detail.

Upon trial before the court without a jury, the principal note, the deed of trust securing it and the assignment from the original payee to appellee were offered in evidence. Also offered were the eight second lien notes and the eight deeds of trust securing them. Appellee further introduced in evidence over appellants' objection the collateral assignment dated August 4, 1956, whereby appellants pledged and transferred the eight second lien notes and the liens securing them to appellee as additional security for the principal note.

Appellee, offered as the only witness during the trial, testified that appellants had wholly failed to make any of the $90 monthly payments provided in the note since he had acquired it on July 31, 1956, but that he had credited thereon $205.74 representing a return of premiums on a fire insurance policy which had been cancelled by appellee.

On cross-examination, appellee testified that he had collected $1,128 on the pledged notes from the makers thereof, but such payments had not been applied to the $90 monthly payments on the principal note pursuant to an agreement with appellants but had been placed in a trust fund. The

cause was tried on March 22, 1957, and the appellants offered no evidence.

Pursuant to a request therefor, the trial court filed in substance the following findings of fact:

1. That on July 31, 1956, appellee was the owner of the principal note dated April 13, 1956, in the original sum of $8,961, executed by appellants which appellee acquired from the Colorado County Federal Savings and Loan Association by a duly recorded written transfer dated July 31, 1956.

2. That at the time of transfer there was due on the note $8,940.50 and that said note was payable in monthly installments of $90 each on the first day of each month until fully paid.

3. That said note was originally secured by a lien on Lot 5 in Block 3 in the McCarson Subdivision, near the town of Boling, Wharton County, Texas, which lien was duly recorded in said county and was transferred to appellee.

4. That on August 4, 1956, defendants as additional security for the payment of said note pledged and assigned to appellee eight certain second lien notes described in his petition by a written instrument recorded in Vol. 100, page 257 of the Deed of Trust Records of Wharton County, Texas, and that said instrument, among other things, provided:

"and provided that the payments which are due and owing and shall henceforth become due and payable by the Payors in said promissory notes described in Paragraphs 1 through 8 before herein shall henceforth be payable by said Payors to said Chas. P. McElroy at his office at Wharton, Texas, until said promissory note of April 13, 1956 is paid in full, both principal and interest, and which payments, when made, shall be credited on the principal and interest of said promissory note of April 13, 1956 now payable by said Ralph R. Gresham and wife Johnnie Gresham, to said Chas.

P. McElroy as set out above, *and which payments shall be in addition to the regular payments provided in said promissory note."* (Italics ours.)

5. That appellants made none of the $90 monthly payments as provided in the note and that at the time suit was filed payments for August, September, and October, 1956, were delinquent in the sum of $270, except that on October 11, 1956, the sum of $205.74 was credited on the note as a refund of premiums due appellants on an insurance policy cancelled by appellee, and that none of the payments since that date had been paid or tendered.

6. That there had been paid to appellee by the payors of the various pledged notes under their terms and the collateral assignment the following amounts:

| August, 1956 | $38.00 |
|---|---|
| September, 1956 | 70.00 |
| October, 1956 | 70.00 |
| November, 1956 | 670.00 |
| December, 1956 | 70.00 |
| January, 1957 | 70.00 |
| February, 1957 | 70.00 |
| March, 1957 | 70.00 |
| Total _____ | $1,128.00 |

as shown by credits on said notes.

7. That on March 25, 1957, there was due on the principal note, after allowing all credits, the sum of $8,141.50 principal and interest and the additional sum of $814.15 as attorney's fees, making a total amount of $8,955.65 bearing interest at the rate of 10% per annum from date until paid.

The trial court also returned the following conclusions of law:

1. That the payments provided in the notes sued on had not been paid and the plaintiff had the legal right to declare the whole amount due and to file suit thereon.

2. That the liens on the lot securing the prinicpal note and on the pledged notes were good and sufficient liens and became

subject to foreclosure upon default in the payment of the original note.

3. That the instrument pledging and assigning the eight notes and liens securing them as additional security for the original note did not change or alter the terms of the original note but merely added additional security and the possibility of additional payments thereon.

4. That appellee did not in any manner become bound to waive or abandon accelerating the maturity of the original note.

5. That appellee was entitled to a judgment against appellants in the sum of $8,955.65 with interest until paid at the rate of 10% per annum and for a foreclosure and sale of all the property subject to such liens.

Judgment was accordingly entered in appellee's behalf against appellants on April 19, 1957, for the sum of $8,955.65 with interest from date thereof until paid at the rate of 10% per annum, with a forclosure of the deed of trust lien against the lot in the McCarson Subdivision, and also a foreclosure of the lien against the eight notes and deeds of trust securing same which were pledged as additional security for the principal note upon which suit was based. From this judgment appellants have duly perfected their appeal.

By their first point appellants contend the trial court erred in admitting in evidence over their objection the collateral assignment of the eight second lien notes and the liens securing them given by appellants to appellee on August 4, 1956, as additional security for the principal note because, appellants assert, the provisions for payment therein were "repugnant" to the payment provisions of the principal note and constituted a new cause of action not alleged upon; and by their second point appellants assert error on the part of the trial court in his findings of fact and conclusions of law that the principal note was delinquent when an amount in excess of the monthly payments falling due thereon

had been credited on the note when suit was filed.

These points will be considered together, and since their determination will involve a discussion of the pleadings of the parties in the trial court it is necessary to set forth in some detail portions of both the petition and answer upon which the parties went to trial.

Appellee, after alleging his purchase of the principal note and lien securing it, further averred that because of the insufficiency of the security originally given, because, so he testified, there was no house upon the lot, appellants on August 4, 1956, by way of additional security pledged and transferred to him by a written instrument eight second lien notes ranging in amounts from $450 to $1,700, each being secured by a deed of trust on certain lots in Wharton County and setting forth in detail a description of each note by date, amount, the names of the makers, the name of the payee, and the terms of the payment.

Appellee then alleged that appellants had failed to make the installment payments on the principal note, as provided therein, and that he had elected to mature the unpaid balance and foreclose the liens securing it. After alleging that the note had been placed in the hands of an attorney for collection, whereby he became entitled to an additional 10% on the principal and interest as attorney's fees, he prayed for judgment against appellants for the unpaid balance on the note, interest and attorney's fees, together with a foreclosure of the liens securing it.

Appellants in their answer entered a general denial and then specially denied that the note dated April 13, 1956, was delinquent. By way of further defense, after expressly referring to appellee's statement in his petition that appellants "have pledged and transferred eight promissory notes and liens * * * securing said notes on real property * * * as collateral security for said original note * * *," appellants further alleged:

" * * * that said notes pledged provide payment sufficient in total amount to pay the installments on said original note * * * that plaintiff understood and agreed that the income from the pledged notes would be used as payment for plaintiff on the original note. That Defendants relied upon that agreement and understanding. The Defendants acted upon said agreement and understanding. * * * These Defendants had no knowledge that plaintiff would not accept payments from the pledged notes as payments upon the original note."

When the appellee tendered in evidence the collateral assignment dated October 4, 1956, appellants objected to its admission on the grounds that there was no pleading to support such assignment; that it tended to vary the terms of the note and was an attempt to prove an additional cause of action. It is the trial court's action in overruling this objection and admitting the instrument which is challenged by appellants' first point of error.

Obviously, the part of the instrument which appellants sought to have excluded from the record was that quoted by the trial court in paragraph numbered 4. of his findings of fact, and particularly that provision which read: " * * * and which payments (collected on the eight second lien notes) shall be in addition to the regular payments provided in said promissory note," referring to the $90 payments falling due on the principal note on the first day of each month.

When appellee alleged in his petition that appellants, as additional security for the principal note, had executed the collateral assignment and transfer dated August 4, 1956, it is evident that he did so for the purpose of alleging the additional lien securing the principal note, which he was seeking to foreclose. His right to declare the principal note matured upon the failure to make the monthly payments was in no wise predicated upon any provision of the

collateral assignment. This provision appeared in the principal note.

Appellants, being confronted with appellee's allegations that they had defaulted in the payments on the principal note, were then required by Rules 94 and 95, Texas Rules of Civil Procedure, to plead payment as a special defense in order to offer any evidence to that effect. Pierce v. Baker, Tex.Civ.App., 238 S.W. 699. They thus attempted to support this contention by pleading that the amounts paid on the pledged notes by the makers to appellee were to be treated as payments on the monthly installments of the principal note. Obviously, this contention was completely refuted by that portion of the collateral assignment quoted in paragraph numbered 4. of the the trial court's findings of fact. In presenting his case, appellee therefore offered the pledge assignment in its entirety to prove, first, the lien he sought to foreclose upon the eight second lien notes and the deeds of trust securing them and, secondly, to refute appellants' plea of payment. This, we believe, appellee was entitled to do because he was not required to file a supplemental petition or any responding pleading in order to offer proof upon the trial to refute appellants' plea of payment. Rule 82, T.R.C.P.; Hayes v. Texas Employers' Insurance Ass'n, Tex.Civ.App., 254 S.W. 501, writ ref.; Levy v. National Radiator Corporation, Tex.Civ.App., 44 S.W.2d 999; Blount, Price & Co. v. Payne, Tex.Civ.App., 187 S.W. 990. The trial court, therefore, did not err in overruling appellants' objection to the introduction of the collateral assignment.

Appellants further contend that the provisions of the collateral assignment of the eight notes and the liens securing them were "repugnant" to the payment provisions in the principal note sued upon and that the collateral assignment was inadmissible in evidence because appellee had failed to plead "the separate cause of action".

At the very outset it should be stated that we are wholly unable to find any repug-

nancy between the collateral assignment and the principal note. The pledging of the eight second lien notes did not in any way change or alter the monthly payments falling due on the original note. They were neither increased nor decreased. In fact, if the makers of the collaterally assigned notes had wholly made default and appellee had not collected anything on them, appellants would not have been in default on the principal note so long as they made the $90 monthly payments as provided under its terms. It is equally inaccurate to suggest that appellee acquired a separate cause of action against appellants by the collateral assignment. He only received additional security for his principal note coupled with the authority to collect the payments falling due thereon from the makers. As heretofore discussed, appellee sufficiently alleged the collateral assignment in his original petition to foreclose his lien on the eight notes and the deeds of trust liens securing them, and to that extent only did he rely on the pledge agreement for any affirmative relief.

■ As previously indicated, appellee was the only witness who testified. He stated that appellants had never made any payments to him and that when he filed suit on October 19, 1956, there were three payments of $90 each, or a total of $270, which had fallen due on the note since he had acquired it on July 31, 1956.

However, if it should be conceded that the $205.74, which was credited on the note, representing the return of premiums on the fire insurance policy, should be treated as payments, the sum of $64.26 was still due and unpaid upon the date the suit was filed. Moreover, at the time of trial in March, 1957, five additional payments had become due, and appellee testified that none of these payments had been made. The record discloses no tender of any of the payments by the appellants at any time up to and including the time of the entry of judgment by the trial court.

We, therefore, overrule appellants' contention raised by their first point, that the trial court erred in overruling their objections and admitting in evidence the collateral assignment in its entirety; and likewise overrule the appellants' second point, that the trial court erred in its findings and conclusions that the principal note was delinquent.

■ Appellants' third point of error is that the trial court erred in entering judgment for appellee against them because (1) appellee never made demand upon appellants for the monthly payments; (2) nor did he notify them that he was accelerating the maturity of the note before he filed suit thereon; and (3) he accepted payments on the pledged notes after he filed suit.

The point is grounded upon three separate premises. Appellee by a counterpoint urges that appellants wholly failed to plead as a defense the contentions raised under (1) and (2), and being affirmative defenses they have been waived and cannot be raised for the first time on appeal. A review of appellants' trial pleadings sustains appellee's contention. Although this position is so sound fundamentally that it scarcely needs citation of authority for support, the following statement from Texas Jurisprudence, Vol. 3-A, page 172, under Appeal and Error, Sec. 139, is appropriate:

"Theory as to Defense.—Generally, the parties on appeal may not present a theory in regard to defenses different from that interposed in the trial court. And a recovery by the plaintiff may not be defeated on appeal upon a defense not pleaded. 'Justice will not tolerate the practice of defeating the plaintiff's cause with a defensive issue which had not been pleaded, and of which the plaintiff had no notice prior to the trial, and to meet which he was denied the opportunity to present his evidence.' Even though a particular theory of defense may be justified by the evidence, the appellate court may not dispose of the case on such theory when it was not set up in the trial court."

■ However, had these issues been properly raised they would not have been tenable here because the note upon which this suit was based specifically provided that "the makers, endorsers, and sureties of this note hereby severally waive presentment for payment, notice of non-payment, and protest * * *."

Moreover, under the Negotiable Instruments Act, Article 5937, Sec. 70, Vernon's Ann.Tex.St., it is provided that "Presentment for payment is not necessary in order to charge the person primarily liable on the instrument * * *".

In support of their first two premises above referred to, appellants rely on Bischoff v. Rearick, Tex.Civ.App., 232 S.W.2d 174, writ ref. n. r. e.; Brown v. Hewitt, Tex.Civ.App., 143 S.W.2d 223, writ refused, and Curtis v. Speck, Tex.Civ.App., 130 S.W.2d 348, writ refused. None of these cases contained the clause waiving presentment for payment, notice of non-payment, and protest such as the note involved in this suit. In each of these cases, also, there were facts which invoked the distinguishing feature of equity being called upon to relieve a debtor based upon some character of fraud or other inequitable conduct on the part of the creditor, coupled with the fact that when it became known to the makers of the notes that the holder had accelerated the maturity they immediately tendered all delinquent payments and kept the tenders good during the pendency of the cause in which they sought equitable relief. These facts do not appear in the record in the case under consideration.

■ This case, we believe, is controlled by the rule as announced in Kyle v. Commercial Credit Co., Inc., Tex.Civ.App., 152 S.W.2d 465, 467, wherein it was said:

"It is the law that in the case of a note payable in installments or series of notes authorizing the holder, at his option, to declare same due for default in the payment of any prior installment of interest or principal, that the filing of suit for the entire debt evidences the exercise of the option, and want of notice of the intention to exercise such option is no defense. Dieter v. Bowers, 37 Tex.Civ.App. 615, 84 S.W. 847; Seaboard Bank & Trust Co. v. Amuny, Tex.Civ.App. 6 S.W.2d 186, affirmed, Tex.Com.App., 23 S.W.2d 287; Natali v. Witthaus, 134 Tex. 513, 135 S.W.2d 969, loc. cit. 977.

"The above proposition should perhaps be qualified by the statement that it is valid only where the note does not provide for notice; further, there must be an actual default as to the installments of interest or principal."

The same rule of law was declared in Dieter v. Bowers, 37 Tex.Civ.App. 615, 84 S.W. 847, 849, in which it was said:

"The effect of the default in the payment of the interest note in question for more than 60 days gave plaintiff (in the terms of the contract) the right to declare all the notes due and payable, and to proceed by suit to enforce their payment and to foreclose the lien. This was the equivalent, so far as the maturity of the notes is concerned, of making the notes due and payable at plaintiff's option, or giving him the option to declare them due and to bring suit. In cases where the contract was worded substantially as just stated the question has frequently been raised whether or not the notes matured and suit was authorized upon them unless the option was previously exercised, and notice thereof given the debtor; and the clear weight of authority is that this is not required * * * The contract is to be enforced as the parties have made it. It had not provided any particular form or manner for declaring the notes due, but gave the owner and holder of the notes in general terms the right to declare them due, which he could do in any manner he saw fit. The filing of the suit was a declaration of that purpose."

The foregoing statement was quoted with approval by Section B, Commission of Appeals, in Amuny v. Seaboard Bank & Trust Co., Tex.Civ.App., 23 S.W.2d 287. See also Natali v. Witthaus, Tex.Com.App. Sec. B, 134 Tex. 513, 135 S.W.2d 969.

The remaining proposition under this point is that appellee accepted payments on the pledged notes after he had filed suit. We find no merit in this contention because the payments which were collected were only those made on the pledged collateral and did not in anywise, as heretofore pointed out, affect the obligation of appellants to make the monthly payments on the principal note. In fact, appellee was under the duty imposed by the pledging agreement with appellants to receive such payments to minimize any possible loss to them and due credit was given by the court on the principal note upon the entry of final judgment in this cause. Appellants' third point of error in its entirety is, therefore, overruled.

The judgment of the trial court is, therefore, in all things affirmed.