**COMMERCIAL CREDIT CORPORATION,**
Appellant,

v.

**Curtis TAYLOR, Appellee.**

No. 440.

Court of Civil Appeals of Texas.

Tyler.

Nov. 20, 1969.

Rehearing Denied Dec. 18, 1969.

Folley, Snodgrass & Calhoun, Amarillo, for appellant; A. J. Folley, Amarillo, of counsel.

Kolander & Templeton, Amarillo, for appellee; Robert L. Templeton, Amarillo, of counsel.

MOORE, Justice.

This is a suit for debt and for foreclosure of a lien under a conditional sales contract. Appellant, Commercial Credit Corporation, instituted suit against appellee, Curtis Taylor, alleging that on August 7, 1965, appellee executed a contract in which he promised to pay appellant, Commercial Credit Corporation, a portion of the purchase price of one used 1964 Plymouth automobile in the total sum of $2,340.00, payable in 30 monthly installments of $78.00 each, commencing on September 20, 1965. Appellant alleged further that appellee had become delinquent in his payments by failing to pay the installment due in March, 1967, and in April, 1967, and that as a result, appellant had exercised its option to declare the whole unpaid balance due in accordance with the provisions of the note and contract. Appellant prayed for a judgment in the amount of $1,192.56, representing the amount alleged to be due and payable as of the date suit was filed on April 28, 1967, together with interest and attorneys' fees, and for foreclosure of its lien. Ancillary

to the suit, appellant caused a writ of sequestration to be issued and as a result, the automobile was taken from appellee's possession under the writ.

The appellee answered alleging that the appellant, by accepting late payments, waived its right to insist on prompt payment and repossess the automobile and was estopped to mature the indebtedness and sequester the automobile without notice, and alleged that the writ of sequestration was therefore wrongfully issued. The appellee further alleged that appellant's conduct was malicious and asked for exemplary damages. In a trial before a jury, the jury found that the appellant, by accepting late payments, was estopped and waived its right to obtain sequestration. The jury also found that the action of the appellant in obtaining sequestration was done with malice, and found exemplary damages therefor in the sum of $3,500.00. The jury further found that at the time of the sequestration, the automobile had a value of $1,400.00. It was admitted by all parties that the amount due and owing by appellee upon the contract amounted to the sum of $1,100.00. Based upon the verdict and the admissions, the trial court rendered judgment for appellee in the sum and amount of $3,800.00, which included the $3,500.00 for exemplary damages, together with the sum of $300.00 representing the value of the automobile, less the amount due and owing by appellee upon the contract. From such judgment, the appellant has duly prosecuted this appeal.

The evidence shows that the contract was dated August 7, 1965, and provided for 30 monthly installments in the amount of $78.00 each, beginning on September 20, 1965, with a like installment being due on the 20th day of each month thereafter until fully paid. Such installments were payable at the office of Commercial Credit Corporation in Amarillo, Potter County, Texas. The evidence shows that while appellee paid each monthly installment from September, 1965, through March, 1966, each installment was anywhere from one to eight days late. The April, 1966, installment was not paid. The May, 1966, installment was not paid until May 24, and was credited on the April installment. Appellee did not pay the June installment. The next payment was made on July 11, 1966, and was credited on the May installment. On July 29, 1966, the parties agreed that for a fee of $15.00, appellee would be granted a one-month extension upon his June installment so that the same would be due July 20, 1966. Following this agreement, appellee made a payment on August 15, 1966, which was credited on the July installment; another payment was made on September 29, 1966, which was credited on the August installment; no payment was made in October, 1966; a payment was made on November 9, 1966, which was credited on the September installment. On December 9, 1966, the parties, for and in consideration of $11.04, agreed that the installment due on November 20 would be extended for 30 days until December 20. On December 12, 1966, appellee paid an installment which was credited to the November installment. Appellee also failed to pay the December installment due on December 20 and the January installment due on January 20, 1967. The remaining payments were made on February 7, 1967; March 15, 1967; and April 6, 1967.

Going back to the extension agreement dated December 9, 1966, the evidence shows that the parties agreed that the November payment would not be due until December 20, 1966. If we assume, as the appellee contends, that the December 12th payment had the effect of bringing appellee's account current until December 20, 1966, appellee was current on all past due installments on that date. However, it must be remembered that the regular December installment also fell due on December 20. The evidence shows, without dispute, that appellee failed to pay the December installment on December 20 and also failed to pay the January installment on January 20, 1967. Thus, appellee was delinquent on two installments and on

April 20, 1967, became delinquent on another installment and remained delinquent on those installments until the date suit was filed on April 28, 1967.

The evidence further shows without dispute that in December, 1966, or January, 1967, one of the employees of the appellant contacted appellee at his home in Amarillo and advised him that he was delinquent and that in the event he did not pay his past due installments, the company would take possession of the automobile. At that time, appellee displayed a revolver and stated that appellant was not going to take possession of the automobile and that he would make payment in a day or two. Appellee was again contacted by Don Potts, the customs service manager of the appellant, in March, 1967, and was told that he was two months behind in his payments and that if he did not bring the payments up to date, he would have to send the Sheriff out for the automobile. Other than the two foregoing demands, the appellant made no other formal demands or requests for payment prior to the time suit was filed, and appellant obtained possession of the automobile through sequestration.

The Conditional Sales Contract contains the following provisions:

"6. In the event purchaser defaults in any payment due hereunder  *  *  * the seller shall have the right, at his or its election, to declare the unpaid balance, *  *  * to be immediately due and payable. Further in any such event, seller or any sheriff or other officer of the law may take immediate possession of said property without a demand, * *.

"In the event of repossession of said property, seller may either sell same at public sale (at which seller may bid) or dispose of same, by private sale or otherwise, in such manner and upon such terms as shall be commercially reasonable, without demand for performance, with or without notice to purchaser (if given, notice by mail to address hereon being sufficient), with or without having said property at place of sale or other disposition thereof. * * *

"7. The seller's acceptance of any instalment or payment after it or the full amount may have become due and payable hereunder shall not be deemed to alter or affect, the purchaser's obligations or the seller's rights hereunder with respect to any subsequent payments or default therein."

The question presented is whether or not the conduct of appellant, Commercial Credit Corporation, was such as to show a waiver or an estoppel because of the acceptance of the late payments. If appellant waived its right to insist upon prompt payment of the installments or conducted itself in such a manner as to reasonably cause the appellee to believe that they would not insist on the right to prompt payment, and he relied thereon to his detriment, then unquestionably appellant would be liable to appellee for any and all damages caused by wrongful sequestration or by conversion. On the other hand, if the facts are not sufficient to raise the question of waiver or estoppel, then there could be no liability for seizure of the automobile under the writ of sequestration because appellant had a right under the provisions of the Conditional Sales Contract to seize the automobile when the installments became past due.

By the first two points of error, appellant contends that the trial court erred in submitting appellee's defensive issues of waiver and estoppel and in rendering judgment based on the jury's finding because the evidence failed to raise either of such issues. Appellee argues that the evidence was sufficient. With respect to the issue of estoppel, he argues that since the proof shows that appellant accepted late payments, and thereafter failed to notify him that the company intended to mature the entire indebtedness because of his late payments, it became estopped to insist on strict enforcement of its contract. Hence he contends that he was deceived and as a re-

sult the sequestration was wrongful and amounted to a conversion. Consquently, he maintains that the judgment for damages was supported by the evidence and must be sustained. We do not share this view.

■ While the instrument sued upon is a Conditional Sales Contract, since it reserved title in appellant, it is, in effect, a chattel mortgage. Article 5489, Vernon's Ann.Civ.Stat.; Minnehoma Financial Co. v. Johnson, 152 Tex 386, 258 S.W.2d 78 (1953). Therefore, the rules regulating foreclosure of chattel mortgages become applicable.

■ As demonstrated above, the contract gave the appellant the right to accelerate the payments and mature the entire indebtedness upon appellee's failure to pay any installment when due. Thus, the burden of proving that appellant waived such right, or that it had conducted itself in such a manner so as to estop it from claiming such right, was upon the appellee. Smith v. Northwest National Bank, 403 S.W.2d 158, (Texarkana, Tex.Civ.App., 1966, wr. ref., n. r. e.).

■ Ordinarily, waiver and estoppel constitute questions of fact, but such questions become one of law where the facts and circumstances are admitted or are clearly established. Miller v. Deahl, Tex. Civ.App., 239 S.W. 679, (writ ref.); Smith v. Northwest National Bank, supra. We have concluded that the proof, as a matter of law, fails to establish neither the defensive issue of waiver nor estoppel.

Appellee admits in his pleadings that at the time suit was filed, he was delinquent in his payments. It is without dispute that subsequent to the date of the last extension agreement, appellee accepted late payments in February, March and April, 1967.

In essence, appellee urges that appellant should be estopped to enforce the maturity clause because by accepting late payments the company falsely led him to believe that they would not mature the entire indebtedness without notice to him, and in so doing, the company deprived him of the opportunity to protect himself by bringing the payments up to date. In other words, he contends that the company had a duty to put him on notice that it had elected to mature the indebtedness, even though the terms of the contract provided no notice was required.

■ The general rule is that estoppel in pais may be invoked against a party only when he has failed to do that which he had a duty to do, and cannot be invoked because of failure to do that which he owed no duty to do. Liberty State Bank v. Guardian Savings & Loan Ass'n., (Tex. Com.App.) 127 Tex. 311, 94 S.W.2d 133.

■■ The clear weight of authority is that where an installment obligation is payable at the office of a creditor in a particular town or city, and the contract authorizes the creditor, at his option, to declare the whole amount due upon default, no duty rests upon the creditor to notify the debtor of the exercise of the option prior to filing suit. Dieter v. Bowers, 37 Tex. Civ.App. 615, 84 S.W. 847, 849 (1905, writ ref.); Chase v. First National Bank, 1 Tex.Civ.App. 595, 20 S.W. 1027. The contract is to be enforced as the parties made it. The contract not having provided any particular form or manner of maturing the entire debt, appellant could do so in any manner it saw fit. The filing of suit for the entire debt evidences the exercise of the option, and want of notice of the intention to exercise it constitutes no defense. Dieter v. Bowers, 37 Tex.Civ.App. 615, 84 S.W. 847; Seaboard Bank & Trust Co. v. Amuny, (Tex.Civ.App.) 6 S.W.2d 186, affirmed (Tex.Com.App.) 23 S.W.2d 287; Natali v. Witthaus, 134 Tex. 513, 135 S.W.2d 969; Kyle v. Commercial Credit Co., 152 S.W.2d 465, (Tex.Civ.App., El Paso, 1941, writ dism'd); Gresham v. McElroy, 309 S.W.2d 84 (Tex.Civ.App., Houston, 1958, no writ).

■ Since there is no evidence showing that appellee, either before or after suit was filed, offered to pay the debt, we do not have a situation where equity is called upon to relieve a debtor based on fraud or other inequitable conduct, coupled with the fact that after the creditor accelerated maturity, he immediately tendered all delinquent payments and kept such good during his suit for equitable relief. Hence, we think the record fails to establish an estoppel on the part of appellant.

Upon the question of waiver, appellee has not pointed any direct act of waiver and relies solely on waiver by implication arising out of the fact that appellant accepted several late payments.

■ Waiver by implication will be applied only to prevent fraud or inequitable consequences, and to establish an implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such purpose or acts amounting to an estoppel on his part. 60 Tex.Jur.2d, Sec. 9, pages 191–192; Smith v. Northwest National Bank, supra.

■ The issue of waiver should be considered only in the light of what the appellant did. It alone had the power to waive prompt payment of the installment, and therefore its actions alone could constitute a waiver. The Praetorians v. Strickland, (Tex.Com.App.) 66 S.W.2d 686, citing cases.

The only evidence raising any inference that appellant may have intended to relinquish its right to insist upon prompt payment was the fact that it accepted several payments late. If this were the only evidence, such might be sufficient to raise an issue of fact upon the question of waiver. However, other evidence offered by the appellant shows that the appellant repeatedly objected to late payments and insisted that the account be brought current. This led to two extension agreements, the last of which brought the account to a current basis as of December 20, 1967. When appellant fell in arrears in his payments on December 20, 1966, and January 20, 1967, appellant again demanded that the account be brought current and threatened repossession if it were not. There were no further extension agreements and appellee remained delinquent until suit was filed and sequestration was issued.

■ Where the facts conclusively show that a party not in default makes an honest effort to induce the party in default to perform his contract and thereafter continues to insist upon strict performance under the terms thereof, no waiver is shown. 13 Tex.Jur.2d, Sec. 330, page 594; Haddaway v. Smith, 277 S.W. 728, (Tex.Civ. App., Amarillo, 1925, n. w. h.); Smith v. Northwest National Bank, supra. The same situation is presented here. Therefore, we do not believe that the conduct of the appellant in accepting late payments was such as to clearly, unequivocally and decisively show that it intended to relinquish its right to insist upon prompt payment. Consequently, we hold that the finding of waiver was not supported by any evidence of probative force.

■ Appellee having thus failed to establish any defense to appellant's cause of action, appellant had a right to foreclose its lien in accordance with the contract and take possession of the automobile by sequestration. This being true, appellee's cross action for damages for conversion was without foundation and the judgment awarding damages therefor cannot stand.

The judgment will be reversed and here rendered for appellant against appellee for its debt, interest, attorney's fee and all cost in this behalf expended, together with a foreclosure of its lien and order of sale. Appellee will be denied any recovery on his cross action.

Reversed and rendered.